**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01625-GPG-KAS

REHAB MOHAMED,

Plaintiff,

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [ECF #83]**

---

Defendant Society for Human Resource Management ("SHRM") replies to Plaintiff's response [Doc. 84] to SHRM's Motion for Summary Judgment [Doc. 83].

Plaintiff does not dispute the Digital HR and Compliance programs were incomplete when she submitted them. She does not dispute that she received numerous extensions from April 2020 until August 2020. She does not dispute that she met with SHRM's investigator, the head of HR, and the CEO to discuss her allegations of discrimination. Yet, Plaintiff argues the Court should permit a jury to act as a super-personnel department, substituting its judgment for SHRM's as to when it should have extended deadlines or postponed programming. This is not the role of a jury. Even if it were the jury's role, Plaintiff has not set forth evidence sufficient for a jury to decide that SHRM engaged in *intentional* race discrimination. Accordingly, the Court should grant SHRM's Motion for Summary Judgment.

**REPLY CONCERNING UNDISPUTED FACTS ("RUF")**

SHRM stands by the Statement of Undisputed Facts in its Motion. Many of Plaintiff's responses are contradicted or unsupported by evidence in the record. E.g., Resp. ⁋⁋ 14, 16-18, 43, 53-54, 56-59. Other responses are not genuine disputes of fact. E.g., Resp. ⁋⁋ 10-11, 20, 23, 26, 28, 35, 37, 45-48, 50, 52. Where Plaintiff does attempt to raise genuine issues of fact, her responses are deficient for reasons explained in the Argument section. SHRM specifically addresses Plaintiff's following responses:

**22.** Although Plaintiff shared her concerns with Morris in early June 2020, her employment was not terminated until *after* she missed a critical deadline—three months later. *See* SOF 57-58.

**24.** Plaintiff contends that dates of her complaints are disputed; however, this is immaterial and does not create a genuine dispute of fact as SHRM acknowledges that Plaintiff raised concerns about her relationship with Barley in early June 2022. *See* SOF 20, 23.

**30, 33-34.** Plaintiff's beliefs regarding the thoroughness and findings of SHRM's investigation do not create genuine issues of fact; nor does her belief that she was discriminated through SHRM's agents. Further, Plaintiff testified that no one else besides Barley allegedly discriminated against her. *See* SOF 33.

**40-42.** Plaintiff testified that she was "avoiding" having "more one-on-one conversations with [Barley] alone because the conversations were very tense." Doc. 83-1 at 188-17-19. Thus, the undisputed record shows that Plaintiff was non-responsive and avoiding work commitments. *See* SOF 40-42.

**44, 49, 59.** The record shows Plaintiff had received numerous extensions since April 2020 and was aware of the deadlines as early as July 16, 2020. In a July 16, 2020 email, Barley outlined the deadlines for the Digital HR and Compliance programs were July 2020 and August 2020, respectively. Doc. 83-19, p. 146. Nearly a month later, Barley reminded Plaintiff that her July 29 – August 7, 2020 vacation had been approved based on Plaintiff's assurances that the programs would remain on schedule. *See* SOF 49.

**55.** Jackson testified that he was not involved in the discussions or decision to terminate Plaintiff's employment. Rather, he prepared "exit-related documentation" before going out on medical leave just in case the actual decision-makers terminated her employment. No one asked him to prepare the documents and he was simply trying to "cover his bases." Doc. 83-13 at 42:1-12.

**RESPONSE CONCERNING ADDITIONAL DISPUTED FACTS ("RAUF")**

None of the Additional Undisputed Facts ("AUF") create a disputed issue of material fact or demonstrates pretext. As to the statements themselves, SHRM does not dispute RAUF ⁋⁋ 1-5,10, 12-15, 20-22, 26-29, 32, 33-37, 45, 52-55, 57-58. SHRM denies the RAUF ⁋⁋ 6-9,11, 31, 38, 47. SHRM specifically addresses the remainder as follows:

**17, 23.** Disputed. Schacht does not recall this meeting. Further there is no evidence of Mills' alleged meetings with Schacht or Long in the investigation notes. Doc. 85, p. 124 at 82:24-83:8, Resp. Ex. 22.

**25.** Disputed in part. SHRM denies that the programs were delayed due to factors outside of Plaintiff's control. *See* SOF 41-48.

**46-49**. Disputed. SHRM followed best practices when conducting investigations. Doc. 83-16 at 55:1-11. Both Sullivan and Jackson testified that Sullivan conducted "intake" interviews with Plaintiff while Jackson interviewed principal witnesses. *Id*. at 51:15-21, 52:1-10; Doc. 83-13 at 104:22-106:5. Plaintiff's cited testimony does not support the allegation that Sullivan expected Jackson to determine Plaintiff's race for the investigation. Further, Jackson noted Plaintiff was a woman of color in his notes. Resp. Ex. 23 at 331:2-332:12.

**50.** Disputed. Jackson testified that he and Sullivan discussed a range of scenarios including termination before August 13, 2020. Doc. 84-1, p. 107 at 244:20-245:3.

**51.** Disputed in part. SHRM admits that Jackson interviewed Mills as part of the investigation and her statements are included in Jackson's notes. SHRM denies that Mills corroborated Mohammed's discrimination complaint. Resp. Ex. 22.

**56.** Disputed. Jackson's understanding of the reasons for Plaintiff's termination is immaterial as he was not a decision-maker. *See* RUF 55. Plaintiff was terminated for failing to submit completed projects on August 31, 2020. *See* SOF 57.

**59.** Disputed in part. SHRM admits that Sullivan approved all terminations and he ultimately approved Mohammed's after she missed two critical program deadlines. SHRM denies the allegation that Sullivan approved Plaintiff's termination before she submitted the programs on August 28 and August 29, 2020. *See* AUF 54, SOF 54, 56, Doc. 83-16 at 46:23-47:11.

**62-63.** Disputed in part. SHRM admits that the programs were incomplete and reassigned to Mills and Godmere. Doc. 83-7 at 290:4-291:19. SHRM denies that the claim that Barley did not know whether the Digital HR program was complete. *See* SOF 53-54.

## ARGUMENT

### A.  Any Genuine Issues Of Disputed Fact Are Immaterial.

Between SHRM's and Plaintiff's statement of fact, there are undoubtedly points in dispute, but they do not form a basis to deny SHRM's Motion. First, as discussed above, the purported fact issues Plaintiff raises oftentimes are not genuine or supported by the evidence. Second, even where a dispute is genuine—such as with SHRM's responses to Plaintiff's additional disputed facts above—the disputes are immaterial. The material facts remain undisputed and summary judgment is appropriate.

### B.  Plaintiff Has Not Raised An Inference Of Discrimination.

Plaintiff cannot establish her *prima facie* case of discrimination. ECF No. 83, RAUF 56, 59. Controlling precedent requires her to show actions that, if left unexplained, make it "***more likely than not*** that such actions were based on a discriminatory criterion illegal under the Act." *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (internal quotation and citation omitted) (emphasis added). Although Plaintiff may disagree with the performance expectations and deadlines set by SHRM, the undisputed facts show that she did not submit the completed programs on August 31, 2020, even after receiving numerous extensions. Therefore, Plaintiff cannot demonstrate that the termination was more likely than not due to discrimination. She has not satisfied her burden for summary judgment.

**C. Plaintiff's Retaliation Claim Fails As A Matter Of Law.**

SHRM established that Plaintiff has **no** evidence that her complaint was the "but for" cause of her termination. Plaintiff now attempts to cast doubt on SHRM's motive by pointing out that she was terminated on September 1, 2020—just 13 days after she complained of retaliation. However, the timing of her termination does not defeat summary judgment. Plaintiff faced no disadvantageous change in her employment after reporting the alleged mistreatment in early June 2020. *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 354 (2024) (finding that a plaintiff must show that she suffered some "disadvantageous" change in an employment term or condition); *see also Montano v. Donahoe*, No. CV 14-0634 WJ/GJF, 2016 WL 5338520, at *12 (D.N.M. July 29, 2016) (noting the protected activity is "the filing of the first EEO charge"). To the contrary, SHRM immediately investigated her complaint and recognized her relationship with Barley was strained. SOF 30, 32. It also initiated mediation and was actively working to remedy the situation. SOF 31, 35-37. Nonetheless, Plaintiff was not meeting SHRM's legitimate performance expectations when she submitted incomplete programs and the June complaint did not excuse her from fulfilling her job responsibilities.

**D. The Reason For Plaintiff's Termination Was Neither False Nor Inconsistent.**

Plaintiff claims that SHRM made the decision to terminate her employment *before* she submitted the incomplete program. Specifically, she claims (1) Jackson and Maldonado drafted termination documents before the August 31 deadline; (2) Jackson testified SHRM terminated her employment because of missed deadlines, communication issues with her manager, and unsatisfactory performance; and (3) Sullivan approved her

termination before the August 31 deadline. Doc. 84 at p. 18. None of these factors establish pretext.

Jackson was not involved in the termination discussions and was not a decision-maker. RUF 55. Thus, his testimony about the alleged reasons for Plaintiff's termination is irrelevant. *See McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998) (Comments attributed to nondecision-makers are not evidence of pretext). Jackson's decision to prepare termination documents before the August 31 deadline is also irrelevant as none of the actual decision-makers asked him to do so and he was simply covering his bases in case they made the decision to terminate Plaintiff's employment while he was on leave. RUF 55. It was not unusual for SHRM to preemptively prepare for several employment scenarios. *Id*., RAUF 50.

While Sullivan does not recall the exact date that he approved Plaintiff's termination, he repeatedly testified that he approved the termination sometime in late August. *See Hysten*, 415 F. App'x at 908 ("Minor inconsistencies, however, do not constitute evidence of pretext"). This testimony aligns with that of the other decision-makers as well as the email communications regarding the completeness of the programs Plaintiff submitted. While Plaintiff may disagree with SHRM's performance expectations and decision to terminate her employment for submitting incomplete programs, there is no evidence of falsity. *See Young v. Dillon Cos., Inc.,* 468 F.3d 1243, 1250 (10th Cir. 2006) (Courts will not "act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments.") (quoting *Jones v. Barnhart,* 349 F.3d 1260, 1267 (10th Cir. 2003)). Moreover, poor performance is a

quintessentially legitimate reason for termination. *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (poor performance is legitimate, nondiscriminatory reason for differential treatment).

**E. Barley's Criteria For Termination Is Not Evidence Of Pretext.**

Plaintiff claims Barley's subjective criteria for her termination establishes pretext because Barley had "absolute discretion" to extend the deadline on which SHRM relied to justify Plaintiff's termination. Plaintiff also argues that Barley often extended deadlines for Caucasian designers. While subjective criteria in a termination decision may be relevant evidence of pretext, that is not the case, as is here, when the criteria are supported by objective facts. *Matthews v. Euronet Worldwide, Inc.*, 271 F. App'x 770, 775 (10th Cir. 2008). Indeed, the objective facts show that Plaintiff received numerous extensions to complete the programs—just like her white colleagues had in the past. In fact, Plaintiff received *three* extensions for each program. SOF 48. In the weeks leading up to the August 31 deadline, Plaintiff asked for additional extensions after taking a vacation that had been approved based on Plaintiff's assurances that the deadline for the programs would remain on schedule. SOF 49**.** Although, Plaintiff now claims Barley could have extended the August 31 deadline based on enrollment numbers, her opinion is irrelevant. *See Kendrick v. Penske Transp. Servs. Inc.,* 220 F.3d 1220, 1231 (10th Cir. 2000) ("[W]e look at the facts as they appear to the person making the decision to terminate the plaintiff.").[1]

[1] Carrie Mills' statements in her declaration regarding the August 31 deadline and the quality of Plaintiff's work do not create genuine issue of material fact nor do they establish pretext as Mills was a not a decisionmaker. *See e.g.*, *Matthews*, 271 F. App'x 770 at 777

**F. SHRM's Investigation Was Sufficient.**

Plaintiff argues the investigation was a sham because Jackson did not conduct the investigation in a way that aligned with her procedural expectations. While SHRM stands by its investigation and findings, even "some flaws in an employer's investigation do not, on their own, necessarily provide a jury sufficient basis to conclude the employer's stated reason for the adverse employment action was a pretext for discrimination." *Markley v. U.S. Bank Nat'l Ass'n.*, 59 F.4th 1072, 1082-83 (10th Cir. 2023).[2] "[F]or an inference of pretext to arise on the basis of a procedural irregularity, there must be some evidence the irregularity *directly and uniquely disadvantaged the employee*." *Id*. at 1083 (citations omitted) (emphasis in the original). [3] Notably, "an employer may ordinarily 'defeat the inference' of pretext stemming from an allegedly unfair investigation by 'simply asking an employee for his version of events.'" *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1314 (10th Cir. 2017) (quoting *E.E.O.C. v. BCI Coca–Cola Bottling Co. of L.A.*, 450 F.3d 476, 488 (10th Cir. 2006)).

---

(coworker's opinion of plaintiff's performance had no bearing on what their manager deemed proficient); *Furr*, 82 F.3d at 988 ("It is the manager's perception of the employee's performance that is relevant.").

[2] *See also Anisworth v. Indep. Sch. Dist. No. 3 of Tulsa Cnty.*, 232 F. App'x 765, 774 (10th Cir. 2007) (unpublished) ("[T]he alleged inadequacy of the investigation does not concert the proffered basis for the employment decision into pretext for discrimination.").

[3] This is because, flaws in an investigation could be attributable to many factors, including a less than diligent investigator or a nondiscriminatory ulterior motivation an employer may have for terminating an employee. Thus, without some other indicia of pretext, a jury would be left to speculate that the investigatory flaws were attributable to a discriminatory motivation. However, a jury cannot render a verdict based on speculation; thus, an employment discrimination plaintiff cannot survive summary judgment where the evidence he produces permits nothing more than a speculative basis for believing discrimination was a motivating factor. *Id*.

Here, Plaintiff shared her version of events with Jackson, Sullivan and SHRM's CEO, Johnny Taylor. SOF 30-32. After Barley declined to grant a fourth extension, Plaintiff, in her August 14 email, complained to Sullivan about being retaliated against. *Id*. at 50. Because the undisputed record demonstrates that Plaintiff had numerous opportunities to present her version of events during SHRM's investigation, no reasonable jury could find the investigation inadequate. *Rutledge v. Bd. Of Cnty. Commr's of Johnson Cnty., Kan.*, 2023 WL 4618335, at *8 (10th Cir. July 19, 2023) (getting plaintiff's "side of the story defeats any inference of pretext from any alleged unfairness in [the] investigation."). This is true even if there were flaws in the investigation. *Markley*, 59 F.4th at 1082-83 (10th Cir. 2023).

**G. SHRM Complied With And Enforced Anti-Discrimination Policies.**

SHRM investigated her claims but did not substantiate them. SOF 30-32. Barley, Morris, and Sullivan, collectively, decided to terminate Plaintiff's employment *after* she submitted incomplete programs. *Id*. at 54. Plaintiff may disagree with the investigation and the reason for her termination, but she cannot present any evidence that SHRM or any of agents acted with malice or reckless indifference. Thus, SHRM is not liable for punitive damages. *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1202–03 (10th Cir. 2015) (employer was not liable for punitive damages where the employer did not conduct their investigations consistently with company policies).

## Conclusion

Plaintiff bears the burden of persuading the trier of fact that SHRM intentionally discriminated against her. Each of her pretext arguments fails as a matter of fact and as a matter of law to raise a genuine issue of material fact.

Respectfully submitted this 27th day of September 2024.

*s/ Virginia L. Woodfork*
M. Levy Leatherman
Virginia L. Woodfork
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.362.2824
Facsimile: 303.629.0200
Email: lleatherman@littler.com
vwoodfork@littler.com

Tanja Darrow
Littler Mendelson, P.C.
633 West Fifth Street, 63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile: 213.443.4299
Email: tdarrow@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September 2024, a true and correct copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was filed by CM/ECF and was served on the following parties:

Ariel Beryl DeFazio
Lowrey Parady Lebsack LLC
1490 Lafayette Street, Suite 304
Denver, CO 80218
Phone: 303.593.2595
Fax: 303.502.9119
ariel@lowrey-parady.com

Hunter Anthony Swain
Swain Law LLC
1490 North Lafayette Street, Suite 303
Denver, CO 80218
Phone: 720.815.5281
hunter@swainemploymentlaw.com

*Attorneys for Plaintiff*

Robert Allen Lees
Robert A. Lees & Associates
5655 South Yosemite Street, Suite 350
Greenwood Village, CO 80111
Phone: 303.292.1020
ral@robertalees.com

*Attorney for Interested Party*

Tanja L. Darrow
Littler Mendelson P.C.
633 West 5th Street, 63rd Floor
Los Angeles, CA 90071
Phone: 213.443.4300
Facsimile: 213.443.4299
tdarrow@littler.com

M. Levy Leatherman
Virginia LeeAnn Woodfork
Littler Mendelson P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Phone: 303.362.2880
Facsimile: 303. 629.0200
lleatherman@littler.com
vwoodfork@littler.com

*Attorneys for Defendant*

*s/ Laura L. Custer*
Laura L. Custer, Legal Assistant

# EXHIBIT 22 TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [ECF #83]

## *Rehab Mohamed v. Society for Human Resource Management*

## Case No.: 1:22-cv-01625-GPG-KAS

w/ [illegible]
RM

[illegible] [illegible]

1 MS Note:
6/30 Conversation with
Carolyn Barley

- Meeting w/ PMQ 6/29
  - Demographic info — comments [illegible]
  - diverse, sets opinion — RMs and ok

- I said you [illegible]
  "Just join and listen"

Called her
'Confused by note, email

Angry — raising her voice

- Doesn't respect, don't know why you don't value opinion

- Leadership would drive but
  - Disagreed but not her intent
  - I value & respect you

EXHIBIT
Jackson Exhibit 66
exhibitsticker.com

Ebony - Bias w/ Carolyn
- women of color
- same concern

~~Stephany~~
Ebony - hasn't been performing to their role

RM gets really passionate & inappropriate they
- empathy

'Doesn't have to show up b/c of hurt that CB has caused

'Anything Carolyn will do

SHRM SOCIETY FOR HUMAN RESOURCE MANAGEMENT we know next

7/6/20 Call w/ RM

Ruby Mohamed

MJ Comment: Call between Ruby Mohamed & Mike Jackson
Note: This was scheduled at Ruby's request prior to a facilitated conversation with her and Carolyn Bailey

- Experiencing same comm issues w/ CB
  - micromanaging style - coming from lack of trust in skills - Truth in what telling her
  - something not right
  - Before emailing, asked to send note to check, not allowed to have meeting w/o checking in
  - No other team members held to same standard
- Came up in Review - take ownership of projects
  - hard to do is her emails checked is a set in
- Find new way between two - thought it was in good place
- meeting w/ Contractor for course - need to be on mtg.
  - sound more assertive - need someone w/ Mgr title
  - no mtgs by myself
- Brought it up to deanne
- Carolyn felt really attacked - wanted her to create safe space
- Mention comment - No, not explain me way
  - be in mtgs so content will get delivered on time
  - not based on truth
  - said wrong way - not hearing me - shouldn't be in mtgs.

Follow up - CB & RM talked
- open & candor
- bad experience w/ previous managers
- seemed like she was on board
- not feeling on board
- mtgs to keep up to date
- Scheduled after biweekly
- less than week - PMQ
- invited everyone to mtg but she said to AG that will be on vacation
won't hurt feelings if in meetings - we will be making big decision
- Feel free to join and listen
Felt like she didn't want you to join - decided not to go
- Mtg w/ JM - going well till team meeting
- other team members - AG - confused and not sure what was going on

- Subtle aggressions are happening
- Very mad that CB did this

Email follow up - value mtg & attended
- After mtg - CB stated - really appreciate
Did not respond - thank her but not
Followed up with email (CB) - felt compelled to send email. Did not say that & not what meant

- Didn't want to feel burden of sour[illegible] [illegible]
- didn't mention that

Exchanging for him, try and interpret
- Not straight forward

SHRM SOCIETY FOR HUMAN RESOURCE MANAGEMENT we know next

Exhausting & distracting my work
- dont want to work?

-

Felt disrespected -
am I really valued? Work really making difference

Straight up disrespectful
-denial, then not intent

How can we have open & honest feedback

- Just telling her without sugar coating

- Other pplon team not
- Then credibility comes from who need to prove
' CB no idea things are occurring
Not even sending email
· Team members missed deadlines by weeks - nothing, but KM gets notes
- Well, that person comes from highly pressured environment - it is actually a good thing
- Not dealt w/ same level
- other ppl are white. People of color

- Everything that works - JM gets involved. Things go smoothly
- Work gets held back. Get JM & things get done
  - CB hates it - her position is place where
  - JM needs to join weekly meetings at [illegible]
    - talk to her
- RM not speaking up is not an option.

SHRM SOCIETY FOR HUMAN RESOURCE MANAGEMENT we know next



RM - Be on same page
· CB didnt have issue initially. Moved us. Not same what is expected
CB - Concerns w/ CB in DAI
· Before thought they were good
· Trying to make change
· Our thinking
- Trying !
SHRM
SOCIETY FOR HUMAN RESOURCE MANAGEMENT
we know next

[redacted]

MJ Note: There were notes from a 7/14/20 Division meeting for the Global Division, which Ruby was a part of.

Nick Schacht Division Meeting

Peter Lehmeyer
· Advertising, Sales, & BD

— Area for improvement Growth & Development
· doesn't seem to be a ton of opportunity for growth

* · SHRM Gig board — open opportunities — project based
· Mini SHRM economy

Events
· High Growth & Dev → Low Overall Engagement
· Belonging & Recog → Trust & Ethics
→ Manager Effectiveness

· ET Communications
· blog post, town hall → lacking in depth or inattentive to mood. Gloss over issues
→ RTO rollout; race relations. Lack of ability to get feedback
→ Top down message driven comms

SHRM we know next
SOCIETY FOR HUMAN RESOURCE MANAGEMENT

- Empowerment to speak up
  - SHRM's way or highway
  - unwilling to speak up - fear of antagonist or retribution
  - drop in morale & paranoia
  - Afraid to be collaborative

- Brand loyalty over individual trust
  - brand over coworker
  - does not seem to be equal to trust in & loyalty to one another,
    - Don't feel like others have your back

Improvements - Push out of way so that brand succeeds.
- Town Halls - Anonymously. Nervous about reprisal
- Culture club - not clear on ins & outs. Not sure how it runs, who gets on it. Clarity & having emp. input → equitable & transparent way
- HR checkins to check in on departments. Pulse survey, Inform future surveys

Education
- Stated core purposes

- Management v. Leadership
  - Managers create obstacles but not remove them
    - Managers are not managing
  - Know employees well → duties & tasks
- Lack of team environment
- Seat at table
- All can't be contributors in everything. Clear direction will help.

- Transference of knowledge - Silo mentality & vision

Lack of sharing of resources
- Messaging & clarity lost → top down comm. w/o feedback.

· Building relationships on skills, talents, & interests
→ Utilize strengths finder

· Managing v. leadership.
- Leadership is innate on who you are. How you want things
· Set of rules to follow.

· Need more leadership & guidance to know purpose
· Team mtgs - more agendas & purpose. Let it be meaningful.

· Continued buddy programs.
· Intentionally build relationships b/t mgr

· Build valued relationship of manager
· Does this end here.

SHARED GOALS
- spec
certification together drive
- come together.

· Continued process
· Seat at table

Sales & J Visa

Collaboration
Gap b/t team & rest of org

· Confusion -
Zero sum attitude toward teams
- Question are questions
→ Select departments
→ Few shared goals across departments

· Lack of autonomy & employee empowerment
· Cert dept, team works w/ us. Too many cooks in kitchen
not good for emp, or customers

SHRM SOCIETY FOR HUMAN RESOURCE MANAGEMENT we know next

- Standards - do/don'ts would be helpful for us

- Open & Honest
  - Transparency
  - Silo-ing → deadlines not adhered to. Ppl sugarcoat stuff or push back
  - Lack of info - need full picture to sell
  - More active comm than Sales

- Ppl hold on to grudges in org.
  - Ppl do not address head on → move to mgr.
  - Solve own issues before escalating

- Equip factor.
  - Don't have tools.
  - Sales force not up & running
  - No strong discovery mechanism
  - Lack of specialty trainings. IT trainings not adequate
    - same w/ SF
  - Onboarding
    - Consistency & breadth
    - Lack of trainings w/ other departments
  -

- This is what we are doing → Quarterly mtg.
  - Working on
  - Sales

1130 (circled)

- Need to renew what is going on
  - Open House
  - [illegible] &
  - Lunch & Learn

Principle per Mandy

Guiding Principle

- Each Floor & Department
  ↳ SHRM.io
- Social Media
  → Slack – look ahead
- Who are decision makers on projects
  'So many ppl.
- Ongoing process

Continued coaching, mentoring, & Leadership training –

Project Management Training

BL

– Cross functional opportunity
  - SF results & broader learning on how to work across teams

Gig economy

1st time perspective

- more actively engage leadership
- Look Ahead → vacancies

Emotional health of department
- Busy season & external environment

- Cultivating empathy

SHRM we know next
SOCIETY FOR HUMAN RESOURCE MANAGEMENT

NTS Notes: These are notes from a conversation with Jeanne Morris from 7-16-2020

Comm, share up → know stuff

• Employee Survey

-high but in Mgr Effectiveness

-SD as lead

-Concern around Samantha. See Excellence + Accountability

-Ruby + Ebony happy w/ CB - felt

-have good conversation - appreciative of Solutions

· Notes to SD → after our meeting

-43, Susie, + Ann Mgrs.

-Blindsided

·Mgr Level problem

·Mtg. 90% what Stephanie said

Lack of ethics + morals + trusting leadership

· Shellshocked, Sick to stomach

-Overarching label of entire team, incl. SD

·disappointed that she brought nothing positive to table

- JCs wanting team building outside of Dir + Mgr.

-great idea

- Solutions for positive steps forward

Ugly conversation - got mad at Ann

-SD met w/ JM for 3 hrs

PPl feeling bias in managers with unethical behavior

-LL never heard these words

- Felt so Ground Zero - felt blindsided -

- Cant share how I feel

- Eddie feeling uncomfortable with race conversations - where they are taking path
- Some folks ~~feeling~~ taking down negative path
- Ruby get on phone & provide explanations
- Not going to be under attack by RM
  - two way conv.
- AA women viewed as aggressive - SD

- Divide on team
  - ET saying CB has no ethics & morals
  - Treating her differently b/c of race
  - ED, TT, & KL feeling uncomfortable

· No signs of malicious - Cant do job

· Sick of JCT saying not happy leave
  - call out for those w/ BLM
- ~~[illegible]~~ ET
  · overly critical of org & BLM. wants Enforcement Calls out
  · Its about race rather than performance

ISD MB 7-20-20

MB Note! This session with the Instructional Design team was a follow up to the 7-14-20 Dursley meeting related to the Engagement Survey

AE - issues ~~to~~ with prior manager

· things improve - always there, need resource
- here + available → count on her
- Ease of processes
- Understand timing of ID project
  - gets it because it means she understand

Felt bonding - everything happened has made weird

· Idealogically disagreed JCT
· Agree more than not
  · Mash all the time
  · JM - handled team better

~~[illegible]~~ Friction b/t some members impacts CM

· Existing dynamics

· Awareness - same experience
  · SHRM knows there ~~is~~ an issue

· ~~[illegible]~~ From micromanagement to non-management
  · No info or false info
  · working outside ideology

- Different experience as CM
- Chain of command

- Divide with team in general

How can it be resolved

- Blatant
  - Other parties change
- Third Party - point out biases
- Both parties work hard → not sure all parties are
  - reaches out all parties
- Push of dates for PMO
  - PM did not know dates
- Hands off
- Tools + frameworks for having fruitful conversation

SHRM
SOCIETY FOR HUMAN RESOURCE MANAGEMENT
we know next

MJ Note: This is a conversation with Ann Godmere. It occurred either on 7/21 or 7/22/20.

AG - Follow Up

· Dont get it → see what they are seeing

· worked a lot harder w/ Ebony
- Ebony is performance

· Carolyn cant win

· Maybe it should be delivered
· See things very differently

Operations Communicate to Designs
- Told on 7/8 - moved out to Oct.
- Ruby pinged Fri. → Ruby replied on Fri

- NS - empowering SHRM

Ruby rewriting to fit her narrative

Tigerteam - Mktg & PMO
- More so than other exp.
- Do something
- 9% Salary -
- Went above base salary
- SHRM not protect Emp - brand - reputation

Feel comfortable — only individual [illegible] nobody of color on team. Protest
- Came under fire from racist managers
- [illegible] & lack of understanding

MJ Note: This is a conversation with Carrie Mills from the ISD team. It occurred either on 7-21-20 or 7-22-20

After Conversation on Mon, strong reactions to what I heard

- Reached out to JM. Things from her perspective

- Don't know speakers. Lot going on behind scenes

Tipped me off
- Don't agree w/ ET perspective on onboarding. Received some sort of onboarding. Success is driven by CB.
- Struth [illegible] - Worked hard, did not appreciate [illegible]

- Equitable onboarding
- CB scheduled mtgs in bite sized nuggets. Some things super versed in Types of software

- Say to CM will skipped. Sometimes CB & ET allowed, Sometimes she said no at
- Carolyn made space to feel overwhelmed
- Onboarding pre [illegible] strong. Continued b/c 2 mo is comp

SHRM we know next
SOCIETY FOR HUMAN RESOURCE MANAGEMENT

- perspective — ET was there

- Times when time provided contacts. Side projects that volunteered on for. Q to did not fulfill JDs.
- Not offered opportunity, 2 ppl from team. AG & me.
- ET given side projects from

ET mentioned that she felt micromanaged then not
- CM perspective. ET has disengaged from team. Not much of a talker, but last several she said not a word
- Hard to get in contact for large periods of time
- Used to entertain of -> chit chat, but not

- Create culture of learning
  - ET responded w/ lots of comments. ET's work needs lot of work. [illegible] Lots of comments. Context Received as negatively — place of shared learning
- Told group situation, ET selected to talk to each of us
  - Mtg not about deck. 1 of 2 ways. Partly justify - Wanted self esteem boost
- Fri - feedback deck. Trying to bait into conversation, but put into feedback
  - Don't have emotional bandwidth. & not day which she wants to do

JM - personally have concerns that ET is performing
- Projects in tandem. 1 mo of work = 8/12 hrs of work

CB
- good writing dy name
- Comments that CB about then work that started line
  - didn't speak up
- Not about their quality of work. Moved.
CB has spoken in 1-1 - speaking about struggles with 1-1
- What advice can you have?
- Came to tears w/ ET did not go well

. ET- thanks for snitching

- Inverse - ET speaks frankly. That is not observation about why mgmt white. In kind. Invites more ppl to be more vocal. Why are white - they don't understand ~~Why are they ...~~

- ~~Ruby accurate when spoken to everything on that~~ call.

Incidents talked about why CB kicked

- Can see some of it where it happened
- PMQ mtg - at time perceived way CB perceived it as questionable. No millennials, no minority
- Can see intent
- Must be more b/c doesn't seem
- haven't seen treating differently other
- CB has very high deference to AG
- Ann can really do no wrong - perception
- 2nd in command

No path forward w/ ET

- become so conflated. Shield pulled out.
- Need to move ET.

Learned that she does not want to work w/ me

Timelines across team

Consistent

- Started. Generous timelines but expected to meet them
- Across board, timelines have slipped.

CM - projects has slipped. ET slipped.

- Response have been empathetic - understanding. Been pretty clear that action has to stop. Not made it team wide

SHRM SOCIETY FOR HUMAN RESOURCE MANAGEMENT we know next

# EXHIBIT 23 TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [ECF #83]

***Rehab Mohamed v. Society for Human Resource Management***

**Case No.: 1:22-cv-01625-GPG-KAS**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01625-GPG-SKC

---

REHAB MOHAMED,

    Plaintiff,

vs.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

    Defendant.

---

VIDEOCONFERENCE DEPOSITION OF MICHAEL TIMMY JACKSON

VOLUME III

APPEARING REMOTELY

---

Thursday, July 13, 2023

12:03 p.m.

PURSUANT TO NOTICE and the Federal Rules of Civil
Procedure, the above-entitled deposition was taken via
Zoom, on behalf of Plaintiff, before K. Michelle Dittmer,
Registered Professional Reporter and Notary Public within
Colorado.

A. Yeah.

Q. And this page is a continuation of your notes from your conversation with Carolyn Barley on June 29, 2020, correct?

A. Correct.

Q. At the top of the page, I believe it says, "Ebony," and then it has three kind of dashes --

A. Yeah.

Q. -- all about Ebony.

One of --

A. Correct.

Q. -- them says: Bias with Carolyn.

A. Yeah.

Q. The next dash says: Women of color.

A. Yeah.

Q. And then the next dash says: Same concern.

A. Correct.

Q. Is that accurate?

A. That -- that -- that is how I read the -- the statement there, correct.

Q. And who do you understand "Ebony" to be referring to?

A. That would be Ebony Thompson.

Q. Ebony Thompson, the instructional designer

who reported directly to Carolyn Barley, correct?

A. That aligns with my recollection. I can't remember, you know, if her title varied a bit there, but she was on the instructional design team and reported to Carolyn Barley.

Q. And what is your understanding of the note: Bias with Carolyn?

A. My -- you know, my recollection from the conversation, you know -- you know, with Carolyn was saying -- was basically, you know, Ruby recounting that -- that, you know -- that -- that Ebony had similar -- similar concerns.

Q. Similar race discrimination concerns, correct?

A. Concerns about, you know, bias and how she was treated, you know, and --

Q. Racial --

A. -- and the --

Q. -- bias, correct?

A. Yeah -- I'm sorry, say again?

Q. Racial bias, correct?

A. In -- in -- you know, based off of the second bullet here, "women of color," you know, I would say yes.

Q. So either shortly before this meeting or