IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 22-cv-01625-GPG-KAS

REHAB MOHAMED,

    Plaintiff,

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

    Defendant.

---

**ORDER**

---

Before the Court is Defendant's Motion for Summary Judgment (Motion) (D. 83). Defendant Society for Human Resource Management asks the Court to enter summary judgment on its former employee Plaintiff Rehab Mohamed's claims for race discrimination and retaliation under 42 U.S.C. § 1981 (Section 1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII).  For the reasons set forth below, the Court DENIES the Motion.

### I. BACKGROUND

This is a messy employment discrimination case.  The Court will limit the recitation of facts and procedural background to those issues necessary to decide the Motion.[1]

---

[1] Defendant refiled its Motion without complying, again, with the Court's practice standard requiring exhibits be presented as a consecutively paginated appendix.  GPG Civ. Practice Standard 7.1A(a)(3) ("Where a motion is supported by exhibits, said motion shall be accompanied by one consecutively numbered appendix, containing all exhibits and shall be referenced in the motion, response, and reply by appendix page number and name, e.g., (Movant's Appx., p. 30 – Smith Affidavit)."). Additionally, Defendant merely refiled its Motion and exhibits as they can be downloaded from CM/ECF complete with markings such that the document and page numbers are generally obscured by the new markings overlying the previous markings.  Defendants exhibits each bear only a single exhibit number marking and most contain no page markings, making it functionally impossible for the Court to efficiently consider

Defendant terminated Mohamed's employment on September 1, 2020, with her last day being the next day (D. 83 at ¶ 58).[2] Defendant contends that the sole reason for the termination was Plaintiff failed to complete two projects by their August 31, 2020, deadlines (*id*. at ¶ 57). Mohamed disagrees.

Defendant hired Mohamed in April 2016 (D. 83 at ¶ 1). Her last performance reviews before the events at issue "rated Mohamed as a Solid Performer or Role Model in all criteria" and "did not raise timeliness or meeting deadlines as an issue" (D. 84 at ¶ 1).

On January 19, 2020, Mohamed was promoted to Senior Instructional Designer (D. 83 at ¶ 5). In this role, Mohamed was to design, develop, and enhance new and existing education programs in conjunction with vendors that were, when complete, offered to clients (*id*. at ¶ 6). Her primary supervisor in the new role was Carolyn Barley, Manager Instructional Design (*id*. at ¶¶ 7, 13). Barley had encouraged Mohamed to apply for the promotion and congratulated her (*id*. at ¶¶ 10, 12). They had previously interacted in person without conflict, and Barley knew from these interactions that Mohamed is Egyptian and non-white[3] (*id*. at ¶¶ 8–9).

---

Defendant's 1451 pages of exhibits. Defendant is advised that any future failures to comply with the Court's practice standards will likely result in its filings being stricken or denied with prejudice.

[2] The Court draws the operative facts by paragraph number from the Statement of Undisputed Facts (D. 83 at 1–14) and Statement of Additional Disputed Facts (D. 84 at 4–15). The Court finds the following facts undisputed for the purposes of deciding the motion unless otherwise indicated. Mohamed purports to deny this fact but cites no contrary evidence as required by the Court's Practice Standards (D. 83 at 2). GPG Civ. Practice Standard 7.1D(b)(4) ("Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial."). This fact is deemed admitted.

[3] The protected classes asserted in the Complaint are "Arab/Egyptian/non-White" (D. 1 at 23). In her deposition, she referred to herself as a Black woman (D. 84-1 at 4).

On June 3, 2020, Mohamed complained regarding Barley to Jeanne Morris, Vice President of Education (D. 83 at ¶ 20).[4] Mohamed testified that she shared frustration about Barley micromanaging her during specific incidents, told Morris that she believed Barley treated their white peers differently, and stated that she was having a hard time performing her work because of the situation (*id*.). The next day, Mohamed raised these same concerns in a Zoom meeting with both Morris and Barley (D. 84 at ¶ 13). Barley was upset by Mohamed's complaint and cried (D. 83 at ¶ 23).[5] On June 12, 2020, Mohamed again discussed these concerns on a call with Barley (*id*. at ¶ 24).[6]

After this June 12 call, Barley consulted Mike Jackson, a human resources (HR) employee, who advised Barley to keep documentation about her interactions with Mohamed (D. 83 at ¶ 25). Jackson was, thereafter, responsible for investigating Mohamed's complaint (*id*. at ¶ 30; D. 84 at ¶ 46).[7] As part of the investigation, Jackson spoke with Mohamed. Jackson also met with Morris and Barley's team without Barley (D. 84 at ¶ 14). Mohamed and Ebony Thompson, who is Black, both complained that Barley micromanaged them and otherwise treated them differently based on their race (*id*. at ¶¶ 5, 14; D. 83 at ¶ 28). Carrie Mills and Ann Godmere, both white, did not report any similar concerns about their own interactions with Barley (D. 83 at ¶ 28; D. 84 at ¶¶ 5, 14). Mohamed testified that Barley's micromanagement included requesting to review Mohamed's emails and attend all meetings Mohamed had with vendors (D. 83 at ¶ 29). Mohamed also testified

---

[4] Mohamed purports to deny this fact but cites no contrary evidence. This fact is deemed admitted.

[5] Mohamed purports to deny this fact but cites no contrary evidence. This fact is deemed admitted.

[6] Mohamed purports to deny this fact but cites no contrary evidence. This fact is deemed admitted.

[7] There is some dispute over whether another HR employee was also responsible for the discrimination investigation.

3

that Barley discouraged her from attending an important project meeting that all team members were invited to attend (*id.*).

During the same period he was investigating Mohamed's complaint against Barley, Jackson was also helping Barley ghostwrite emails regarding Mohamed's project deadlines (D. 84 at ¶ 34). On August 12, 2020, Barley emailed Mohamed indicating that both projects that Mohamed was working on should be finished by the "end of the month, August 31" (D. 83-19 at 7). Mohamed responded by describing the issues that she was having with the vendors for each program and inviting Barley to "work with me to ensure that these deadlines are met" (*id.* at 6). On August 13, Nick Schalcht, Chief Global Development Officer, directed Jackson to assist Barley on drafting a response to Mohamed's email asking for assistance with project delays caused by vendors (D. 84-1 at 146). Schalcht wrote in his email that "this offers an opportunity to get the right language on the table to correct her quickly, or to support an eventual case for termination" (*id.*). The ghostwritten email told Mohamed that no assistance whatsoever would be provided and that the "August 31 deadline for both projects is non-negotiable" (D. 83-19 at 6).

On August 19, 2020, Mohamed raised an additional complaint that she was being retaliated against for her previous racial discrimination complaint (D. 84 at ¶ 36). That same day, Defendant created a draft of Mohamed's termination documents (*id.* at ¶ 58).[8] Jackson was also responsible for investigating Mohamed's August 19 retaliation complaint, but he never spoke with her about it and had already provided his recommendations to management (*id.* at ¶ 52). Defendant puts

---

[8] Defendant appears to admit that it was Jackson who began drafting these documents the same day or two days after Mohamed made the retaliation complaint he was responsible for investigating (D 83 at ¶ 55 ("Beginning August 21, 2020, Jackson prepared termination documents for Plaintiff"); D. 84 at 3). Defendant is a HR membership organization that *trains* people on how to do HR tasks (D. 83 at ¶¶ 3, 6).

forward no facts indicating that it ever investigated Mohamed's retaliation complaint (*see* D. 83 at ¶¶ 30–34). Defendant notified Mohamed on August 31 that it concluded her complaints were unfounded (*id*. ¶ 53).

Before August 31, 2020, Mohamed had turned in both of her projects (D. 84 at ¶ 54). On September 1, Defendant gave Mohamed termination documents, including documents that had been prepared and approved a few days before (*id*. at ¶ 57). Nonetheless, Defendant and Barley claim that Barley decided to terminate Mohamed on September 1 solely because she failed to meet the August 31 deadline (*id*. at ¶ 55).

Mohamed's teammate Mills stated in a declaration[9] that Mohamed's two projects were assigned one each to her and the other their other white teammate, Godmere (D. 84-1 at 78). For the project given to Mills, Mills declares that Barley told her that she was not sure how complete it was and gave her no completion date (*id*.). Mills asserts she completed it within a week (*id*. at 79). Mills also declared that "[n]ot once during my employment with [Defendant] did I *ever* meet the target completion deadline for a major project [and] was never disciplined or coached for missing a deadline" (*id*. at 78). She stated that she found Barley's focus on deadlines with respect to Mohamed "quite odd given that neither me nor Ann Godmere were held to the same standard" (*id*.).

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the factual record and reasonable inferences based on said record

---

[9] The Court previously denied a motion seeking to strike Mills' declaration (D. 82).

"in the light most favorable to the non-moving party." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* If the moving party meets this burden, the opposing party must go beyond the pleadings and designate evidence showing there is a genuine triable issue. *Celotex*, 477 U.S. at 323–24. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "[Q]uestions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial." *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To prevail on a claim of wrongful discharge based on race under Title VII, plaintiff has the ultimate burden of proving, either directly or indirectly, that his discharge was motivated by racial bias." *Elmore v. Capstan, Inc.*, 58 F.3d 525, 529 (10th Cir. 1995) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Title VII also prohibits employers from retaliating against an employee

who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (explaining that the same standards apply to Title VII and Section 1981 claims).

"A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Chalepah v. Canon City*, No. 13-cv-02166-NYW-KLM, 2015 WL 5093200, at *7 (D. Colo. Aug. 31, 2015). In *McDonnell Douglas*, the Supreme Court set forth a burden-shifting framework for indirect proof in Title VII or Section 1981 cases. *Id*. Mohamed does not present direct evidence of discrimination. Accordingly, the Court applies the burden-shifting framework.

At the first step of the burden-shifting framework, a plaintiff is required to prove a prima facie case. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). The particular elements of the prima facie case depend on the alleged circumstances. A plaintiff in a wrongful termination suit establishes a prima facie case of discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified for the job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge. *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).[10] To establish a prima facie case of retaliation, a plaintiff "must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there

---

[10] Defendant does not specify what discrimination theory Mohamed is proceeding under, and the Complaint does not clarify (*see* D. 1). Mohamed could also be proceeding under a disparate treatment theory. *See Carpenter v. Boeing Co.*, 456 F.3d 1183, 1186 (10th Cir. 2006).

was a causal connection between the protected activity and the adverse action."  *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008) (internal quotation marks omitted).

Once a plaintiff has established a prima facie case, a defendant must articulate some legitimate, nondiscriminatory reason for the employee's termination.  *See DePaula*, 859 F.3d at 969.  The defendant need only "articulate through some proof a facially nondiscriminatory reason" for the termination that is "reasonably specific and clear."  *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

After a defendant articulates its reason for the adverse employment action, then the burden shifts back to the employee to prove by a preponderance of the evidence that the legitimate justification offered by the employer is merely a pretext for discrimination.  A plaintiff may prove pretext by showing that the employer was motivated by a discriminatory reason or that the employer's explanation was not credible.  *Vaughn*, 537 F.3d at 1153.  To show pretext under Title VII, "the employee need neither prove his or her employer's proffered reasons were false, nor that a discriminatory factor was the sole motivating factor in the employment decision."  *Davis v. Wesley Ret. Communities, Inc.*, 913 F. Supp. 1437, 1445 (D. Kan. 1995).  "Instead, the employee must prove only that a discriminatory factor was also a reason for the employer's decision, and that it was the factor that made a difference."  *Id*.  In evaluating a plaintiff's evidence, the Court must determine whether the evidence interpreted in the light most favorable to the plaintiff could persuade a reasonable jury that the employer discriminated against the plaintiff.  *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994).

## III.  ANALYSIS

Defendant seeks summary judgment based on four issues: (1) that Mohamed cannot show that discrimination caused her termination, (2) that Mohamed cannot show the August 31 deadline was a pretext for discrimination, (3) that Mohamed cannot show that her termination was caused by retaliation, and (4) that Mohamed has not shown that entitlement to punitive damages (D. 83). The Court addresses the first three of these issues together before addressing the issue of punitive damages.

### A. Plaintiff Has Raised a Genuine Issue of Material Fact as to Her Discrimination and Retaliation Claims.

Defendant argues that no reasonable jury could conclude from the available evidence that discrimination and retaliation caused Mohamed to be fired as opposed to her alleged failure to submit completed projects (D. 83 at 14–19).  Contrary to Defendant's arguments, it is relatively straightforward to form a narrative from the disputed and undisputed facts showing discrimination and retaliation caused Mohamed to be terminated:

Just months after Barley began to supervise Mohamed, she complained of racial discrimination based on Barley micromanaging her.  This complaint is a protected activity under Title VII.  *See Unified Sch. Dist. 500*, 750 F.3d at 1171.  It upset Barley.  Mohamed's colleagues corroborated her complaints that Barley treated non-white employees differently.  Because of Mohamed's complaints or as part of her discriminatory micromanagement, Barley imposed rigid deadlines on Mohamed that Barley would not have given to Mohamed's white colleagues. Mohamed complained that this action was retaliatory and, either in retaliation for the initial complaint or this new complaint, one or more of Defendant's employees decided to terminate Mohamed.  Indeed, Defendant began drafting Mohamed's termination documents on the same day

that she complained of retaliation. Mohamed turned in her projects by the arbitrary deadline, but it did not matter what she turned in because the decision had already been made to terminate her based on the pretext that she did not meet the deadlines.

This precise scenario is perhaps or even likely not what occurred, and the Court makes no such finding, but there are undisputed facts, admissible evidence, or reasonable inference supporting each point. The Court finds that a reasonable jury could conclude that Defendant discriminated and retaliated against Mohamed when the facts are viewed in the light most favorable to Mohamed, which they must be at this stage. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Defendant's assertions that there is no apparent causal link between discrimination or retaliation and Mohamed's termination fails to account for the substantial plausible evidence that Barley's imposition of inflexible deadlines itself reflected discrimination and retaliation. *See, e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977) ("Claims of disparate treatment . . . involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."). Mohamed presents evidence under which the use of facially neutral deadlines could plausibly be viewed as discriminatory in context because her non-white colleagues were not treated in the same way. *See Carpenter*, 456 F.3d at 1186 (addressing discrimination where "supervisors are exercising their discretion (intentionally or subconsciously)"). Indeed, she presents evidence that her colleagues Thompson and Mills, who were aware of the context, viewed Barley's alleged different management style for whites and non-whites as discriminatory, including with respect to deadlines. A reasonable jury could reach

the same conclusion. With this in mind, causation is also satisfied. Even under Defendant's theory, Mohamed would not have been terminated but for the deadline.

Mohamed has also shown a genuine dispute whether Defendant's justification for the termination was pretextual. Mohamed "may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted [legitimate] reasons." *Vaughn*, 537 F.3d at 1153. The timing of Defendant's employee's termination-related actions, which began well before the August 31 deadline, casts substantial doubt on Defendant's assertion that Barley decided to terminate Mohamed on September 1 solely because she failed to meet the previous day's deadline. *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1200 (10th Cir. 2015) ("Although evidence of temporal proximity between the protected activity and the alleged adverse employment action alone is insufficient to show pretext, it can support a finding of pretext when combined with other evidence of pretext." (citations omitted)). This inference of pretext is also supported by evidence of the actions surrounding the imposition of those deadlines and Defendant's apparent failure investigate Mohamed's retaliation complaint.[11]  *Id*. (finding "evidence demonstrating that ORMC did not fully investigate his ethics line complaint and

---

[11] Defendants assert that its investigation cannot be the basis for pretext because it asked Mohamed for her side of the story (D. 88 at 9). But this argument presumes that there was a meaningful investigation, which the summary judgment record does not support, at least with respect to the retaliation complaint. Further, the Court finds that a jury could reasonably conclude that the investigation was a sham in view of, for example, Jackson's failure to discuss Mohamed's retaliation complaint with her and his involvement in drafting the email setting deadlines that led to both the retaliation complaint and termination. *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 542 (10th Cir. 2014) ("A 'failure to conduct what appeared to be a fair investigation of' the violation that purportedly prompted adverse action may support an inference of pretext." (quoting *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008))).

complaint of race discrimination" supported an inference of pretext). Accordingly, the Court will deny summary judgment on Mohamed's discrimination and retaliation claims.

### B. Mohamed has Presented Sufficient Evidence to Support Her Request for Punitive Damages.

A plaintiff is entitled to punitive damages under Title VII if her employer engaged in discriminatory practices "with malice or with reckless indifference to [her] federally protected rights." 42 U.S.C. § 1981a(b)(1). "'Malice' or 'reckless indifference' do not require 'a showing of egregious or outrageous' conduct, but instead require proof that the employer acted 'in the face of a perceived risk that its actions [would] violate federal law.'" *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999)).

Defendant asserts in conclusory fashion that Mohamed "offers no evidence showing [Defendant] engaged in a discriminatory practice with malice or reckless indifference to her rights, thus foreclosing her punitive damages claim" (D. 83 at 20). Mohamed responds that the facts support a conclusion that Jackson and another high-ranking HR employee "provided Barley cover with a flawed investigation and orchestrated Mohamed's termination in concert with Barley" (D. 84 at 20). The Court agrees that, when viewed in the light most favorable to Mohamed, a reasonable jury could conclude that Defendant maliciously discriminated and retaliated against Mohamed and did so with reckless indifference to her rights. *See Kennedy v. Life Care Centers of Am.*, No. 21-CV-00706-PAB-STV, 2023 WL 155874, at *9 (D. Colo. Jan. 11, 2023) (finding evidence sufficient to support punitive damages where "defendant's Human Resources employee at its regional office, participated in discussions on whether plaintiff should be terminated"); *Horsewood v. Kids R Us*, 27 F. Supp. 2d 1279, 1284–85, 1288 (D. Kan. Nov. 30, 1998) (denying

summary judgment on punitive damages where management potentially participated in discriminatory conduct despite awareness of protections for the disabled). Therefore, the Court will also deny summary judgment on Mohamed's request for punitive damages.

## IV. CONCLUSION

Accordingly, it is ordered that Defendant's Motion for Summary Judgment (D. 83) is DENIED. Within 30 days, the parties shall jointly email Gallagher_Chambers@cod.uscourts.gov to set a Final Pretrial Conference. GPG Standing Order Regarding Pretrial and Trial Procedures – CIVIL, III.A ("If dispositive motions are filed, parties shall contact the Court jointly via email within thirty days after the Court has issued a ruling (assuming the case survives a motion for summary judgment) to set a Final Pretrial Conference.").

DATED October 8, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge