IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:22-cv-01625-GPG-KAS

REHAB MOHAMED,

    Plaintiff,

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

    Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE [DKT. # 105]**

Plaintiff Rehab Mohamed, by and through her counsel, hereby responds to Defendant's Motion in Limine [Dkt. # 105] ("Motion") as follows.

**I.    LEGAL ARGUMENT**

    **A. Evidence regarding the allegedly unlawful treatment of a Black peer who engaged in protected activity is relevant to pretext.**

At trial, Plaintiff will not seek to introduce evidence of discriminatory or retaliatory treatment of other SHRM employees (including Ebony Thompson) to show that SHRM discriminated or retaliated against her. As Defendant's Motion notes, introduction of such evidence for that purpose would violate Fed. R. Evid. 404(b)(1).

However, Fed. R. Evid. 404(b)(2) makes clear that "prior bad acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Here, evidence about Ebony Thompson falls squarely into these allowed purposes. Plaintiff only

HB: 4849-3892-4766.2

seeks to introduce evidence at trial of SHRM's discriminatory and/or retaliatory treatment of Ms. Thompson, a Black woman who also engaged in protected activity, for permissible purposes, namely, to show SHRM's discriminatory and/or retaliatory intent. "As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990). Testimony about Ms. Mohamed's observations of the way in which both she and Ms. Thompson were treated by their manager, Carolyn Barley, and ultimately terminated after expressing concern about race discrimination is evidence that is probative of SHRM's discriminatory and/or retaliatory intent "and create[s] a fact question on the issue of pretext." *Id.* Its probative value is not substantially outweighed by its prejudice, especially if the Court provides the jury with a limiting instruction.

> **B. Evidence regarding Carrie Mills and Ann Godmere should not be categorically excluded because the jury could conclude that they were similarly situated to Plaintiff and Ms. Mills's testimony is relevant to several claims and defenses.**

Defendant asks the Court to exclude or strictly limit testimony by Plaintiff's coworker Carrie Mills[1] on two bases: (1) that she is not a comparator of Plaintiff and therefore her testimony is irrelevant; and (2) that her testimony would not be probative.

Defendant's Motion misstates the legal standard for determining whether employees are similarly situated enough to qualify as comparators for the purpose of

---

[1] Defendant also included coworker Anne Godmere's name in the title of this section of its Motion; however, in the one short paragraph arguing that Ms. Godmere is not a "comparator," Defendant does not identify any evidence concerning Ms. Godmere that it believes should be excluded. It follows that the Court should deny the Motion as to Ms. Godmere and reserve rulings on the admissibility of evidence regarding her for trial.

proving pretext. In *Kendrick v. Penske Transportation Services*, the Tenth Circuit Court of Appeals explained:

> [A] plaintiff may also show pretext on a theory of disparate treatment by providing evidence that [s]he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness. ***An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline.*** A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated.

220 F.3d 1220, 1232 (10th Cir. 2000) (internal quotations and citations omitted) (emphasis added).

Whether individuals are similarly situated comparators is a question of fact for the jury at trial. *Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007). Ample evidence could support a jury's conclusion that Ms. Mills, Ms. Godmere, and Ms. Mohamed were similarly situated. They had the same supervisor, job title, and duties, and they were subject to the same standards governing performance evaluation and discipline. Ms. Mills started working at SHRM in the same job as Ms. Mohamed within one month of Ms. Mohamed's promotion into that role.

Although it is true that other courts have pointed to "relevant employment circumstances, such as work history and company policies" as germane to the comparator analysis, *e.g., Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997), few courts have expounded on that factor. The two cases that Defendant cites to support its contention that Ms. Mills, Ms. Godmere, and Ms. Mohamed are not similarly situated because of apparent differences in their years of experience do not support this

3

argument. In *Green v. N.M.*, 420 F.3d 1189, 1195 (10th Cir. 2005), the Tenth Circuit agreed with the lower court's finding that the two individuals offered by the plaintiff as comparators were not similarly situated because neither reported to plaintiff's supervisor nor was a probationary employee like the plaintiff. *Id.* The court also noted that one of them, Mr. Garcia, had years more tenure at the *defendant*, not that he had more experience in the role at a different employer. *Id.* at 1195. In *Glapion v. Castro*, 2015 U.S. Dist. LEXIS 15 at **105-106 (D. Colo. Nov. 16, 2015), the court found that the most important distinction between the plaintiff and all eight potential comparators was that not one of them shared plaintiff's history of five disciplinary actions in an 18-month period. The plaintiff and the other comparators also had different duties and GS-levels as federal employees. *Id.* In contrast, here, Ms. Mills, Ms. Godmere, and Plaintiff shared the same supervisor, roles, and duties, and had no record of discipline outside of Plaintiff's termination. With respect to Ms. Mills, both she and Ms. Mohamed had comparable time in the Senior Instructional Designer role and Ms. Mohamed a longer total tenure at SHRM.

Crediting Defendant's argument that neither Ms. Mills nor Ms. Godmere is an appropriate comparator because of their years of experience in comparison to Plaintiff's would narrow the definition of a comparator to such an extent so as to render comparator analysis meaningless as a method of proving pretext. A plaintiff with a discrimination or retaliation claim would have to identify a colleague not only with the same supervisor and performance/discipline standards but also with identical years of relevant experience and tenure working for the defendant. Few plaintiffs could ever identify such a person.

4

To the extent that Defendant requests that Ms. Mills's testimony be barred from introduction altogether because of a purported lack of reliability or probative value (Motion at 6-7), Plaintiff notes that a motion in limine is not the proper avenue to address these concerns and Defendant provides no reason why they cannot be addressed in the context of trial. Substantively, Ms. Mills's declaration (Respondents Appx. [Dkt. # 84-1] at 74-80) reveals that she is not only a comparator witness but a fact witness who observed Defendant's discriminatory and retaliatory treatment of Ms. Mohamed firsthand[2] and who was also personally involved as a witness in Defendant's investigation of Ms. Mohamed's complaints about race discrimination. Ms. Mills swore in her declaration that she worked closely with Ms. Mohamed, that she personally observed racially discriminatory treatment of Ms. Mohamed, that she personally expressed concerns about race discrimination against Ms. Mohamed to at least six of Defendant's managerial or human resources employees, and that she personally participated in SHRM's investigation of Ms. Mohamed's discrimination complaints as a witness. Such testimony is self-evidently probative to the trial of Ms. Mohamed's race discrimination and retaliation claims.

Testimony from Ms. Mills regarding events that took place after Ms. Mohamed's termination is still probative as evidence of pretext and to rebut SHRM's good faith defense to an award of punitive damages. Regarding the former, Ms. Mills can speak to the completeness of Ms. Mohamed's two projects that were due on August 31 at the time

---

[2] The fact that Ms. Mills never met Plaintiff in person (Motion at 6) is of no consequence; they worked together and interacted through phone and video calls and written chats. This type of interaction was typical for the COVID-19-era working conditions in 2020 and remains so in many modern workplaces. That Ms. Mohamed worked remotely does not somehow render Ms. Mills's observations any less direct, relevant, or admissible.

5

Ms. Mohamed handed them in, Ms. Barley's lack of knowledge about the same, and the apparent lack of urgency for either project. (Respondent's Appx. [Dkt. # 84-1] at 78-79, ¶¶ 30-31, 34.) Regarding the latter, a jury could infer from Ms. Mills's frequent expressions of concern that Ms. Mohamed had been discriminated against that the company failed to adequately address violations of which it was aware. *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1138 (10th Cir. 2006) (internal quotations omitted).

### C. The Court should reserve rulings regarding SHRM's evidence preservation for trial.

Plaintiff does not intend to argue at trial that Defendant engaged in spoliation of evidence or that Defendant failed to abide by its preservation duties. Any testimony elicited at trial regarding collection or preservation of evidence would be incidental to other testimony proffered for legitimate purposes, such as for purposes of exhibit authentication or impeachment. To enter a blanket order forbidding Plaintiff from introducing evidence regarding collection of evidence or the existence *vel non* of evidence not produced in discovery would hamstring Plaintiff's ability to: (a) authenticate non-stipulated exhibits and (b) impeach the credibility of witnesses. The Court should thus reserve for trial any rulings on the admissibility of testimony about collection of evidence or the existence of evidence not produced in discovery for trial.

### D. Evidence and arguments about: Defendant's financial status and HR expertise are relevant to punitive damages; Defendant's ability to pay are unlikely to come up; and the parties' relative size may be addressed at trial when they can be considered in context.

Defendant presents four different categories of evidentiary issues in section IV.D of its Motion that Plaintiff addresses in turn.

First, Defendant asks the Court to preclude Plaintiff from making any argument having to do with SHRM's financial status. Plaintiff should be able to present evidence and argument about this, as it is directly relevant to a punitive damages award. *James v. Heuberger Motors, Inc.*, 2011 U.S. LEXIS 11945 at **4-5 (D. Colo. Jan. 28, 2011) (holding that "information about a defendant's financial condition is relevant in a 42 U.S.C. § 1981 case.").

Second, Defendant asks that Plaintiff be restrained from referencing SHRM's ability to pay a judgment, the cost of defense, the number of attorneys appearing on behalf of SHRM, and the number of offices of SHRM's counsel. Plaintiff concedes that these topics are not relevant to Plaintiff's claims and she has no plan to discuss any of them. With that said, this is neither a difficult nor unusual evidentiary issue and should be addressed and resolved in the unlikely event that such evidence is presented at trial.

Third, Defendant requests that the Court prevent Plaintiff from characterizing the case as "one involving an individual against a large corporate entity" or any reference to the case as a "David and Goliath" story. Plaintiff has no plan to specifically invoke the David and Goliath trope; however, because this case does involve a lone plaintiff and a large corporation defendant, that dynamic is inescapably part of Plaintiff's story. Preemptively limiting Plaintiff's ability to reference this reality would unnecessarily constrain Plaintiff's ability to present her case. Again, this is neither a difficult nor unusual evidentiary issue and Defendant provides no compelling reason why it cannot be addressed during trial.

Finally, Defendant seeks to preclude Plaintiff from introducing evidence or argument that SHRM is a so-called "model employer" because of its expertise in human resources. Plaintiff agrees with Defendant that SHRM's expertise "does not make it more or less likely that SHRM unlawfully discriminated or retaliated against Plaintiff." But Plaintiff's introduction of any evidence or argument regarding SHRM's self-proclaimed status as a "leader expert in human resources' best practices" (Answer [Dkt. # 7] at ¶ 2) is appropriate for a potential punitive damages award. That is especially the case here where Plaintiff contends (and a reasonable jury could conclude) that Defendant's own HR personnel employees conducted a sham investigation while taking steps to manufacture a justification for Plaintiff's inevitable termination. (Order Denying Defendant SHRM's Motion for Summary Judgment [Dkt. # 89] at pp. 11-12.) Such a factual finding would support the conclusion that "Defendant maliciously discriminated and retaliated against Mohamed and did so with reckless indifference to her rights." (*Id.* at 12.) It remains the case, of course, that Defendants still have the ability to bring any concerns to the Court's attention during the trial.

## II.     CONCLUSION

In light of the above, Plaintiff requests that the Defendant's Motion in Limine be denied in full. The evidentiary issues that Defendant sets forth in its Motion are most appropriately resolved when evidence is presented at trial.

Respectfully submitted this 10th day of October, 2025, by:

| | |
|---|---|
| SWAIN LAW, LLC | LOWREY PARADY LEBSACK, LLC |
| *s/Hunter A. Swain* | *s/Ariel B. DeFazio* |
| Hunter A. Swain | Ariel B. DeFazio |
| 1490 North Lafayette Street, Suite 303 | 1490 Lafayette Street, Suite 304 |
| Denver, CO 80218 | Denver, CO 80218 |
| Phone: (720) 815-5281 | Phone: (303) 593-2595 |
| hunter@swainemploymentlaw.com | Fax: (303) 502-9119 |
| | ariel@lowrey-parady.com |
| Attorney for Plaintiff | Attorney for Plaintiff |

9

## CERTIFICATE OF SERVICE

      I certify that on October 10, 2025 I personally filed the foregoing with the Clerk of Court using the CM/ECF system, which effected electronic service upon the following by email:

Tanja L. Darrow
tdarrow@littler.com

Virginia LeeAnn Woodfork
vwoodfork@littler.com

*Attorneys for Defendant*

                                            *s/Hunter A. Swain*
                                            Hunter A. Swain