IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.1:22-cv-01625-GPG-KAS

REHAB MOHAMED,

    Plaintiff,

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

    Defendant.

**DEFENDANT'S TRIAL BRIEF**

Defendant Society for Human Resource Management ("SHRM" or "Defendant"), by and through its attorneys, submits the following Trial Brief pursuant to the GPG Civil Standing Order, Part III, Section M.

**I.   CLAIMS TO BE TRIED**

Plaintiff, Rehab "Ruby" Mohamed, ("Ms. Mohamed" or "Plaintiff") asserts claims for discrimination and retaliation under 42 U.S.C. 1981 ("Section 1981").[1]

**II.   FACTUAL BACKGROUND**

    **A.   SHRM'S Background.**

SHRM is a global professional organization dedicated to advancing the field of human resource management. SHRM provides paid courses relied on by thousands of professionals. These courses are central to SHRM's reputation and revenue.

---

[1] Ms. Mohamed's counsel has advised defense counsel that Ms. Mohamed will not be pursuing her Title VII claims at trial.

**B.    After Ms. Mohamed Was Promoted to Senior Instructional Designer, She Took on Two Critical Projects.**

SHRM hired Ms. Mohamed, who is of Egyptian descent in 2016. Ms. Mohamed began with SHRM in the position of e-Learning Specialist and, in 2018, transitioned into the position of Instructional Designer. In February 2020, Ms. Mohamed was promoted to Senior Instructional Designer. At this time, Carolyn Barley, Manager Instructional Design, became Ms. Mohamed's supervisor. Ms. Mohamed was required to design, develop, and enhance new and existing education programs. Senior Instructional Designers are held to a rigorous industry standard, which is widely recognized across the industry, establishing that a single course typically requires three to four months to complete.

Ms. Barley approached Ms. Mohamed to encourage her to apply for the role when it opened in late 2019. Before she encouraged Ms. Mohamed to apply, Ms. Barley previously met Ms. Mohamed and knew that she is from Egypt. The other decision-makers, however, Liz Lacey, Director of Educational Programs, Jeanne Morris, Vice President of Educational Programs, and Nick Schacht, SHRM's Chief Global Development Officer were skeptical of Ms. Mohamed's readiness for the job. Nevertheless, Ms. Barley advocated for Ms. Mohamed's promotion.

In February 2020, Ms. Mohamed took the lead on developing two significant courses: (1) the HR Compliance course ("HR Compliance") and (2) the HR Digital Transformation course ("Digital HR"). To complete HR Compliance, Ms. Mohamed worked with one Subject Matter Expert ("SME") Lou Lessig, a labor and employment attorney. Mr. Lessig was responsible for assisting with creating the legal content of the course and Ms. Mohamed was responsible for designing the learning experience. After Ms. Mohamed received ***multiple extensions*** on both projects, Ms. Barley set a hard

2

deadline for both projects to be complete by August 31, 2020. Critically, both programs were set to go live in early October 2020.

### C. After Receiving Her May 2020 Performance Review, Ms. Mohamed Complained About Ms. Barley's Management Style.

Ms. Barley gave Ms. Mohamed a performance review in May 2020. While Ms. Barley gave Ms. Mohamed relatively good marks on each performance metric, she specifically criticized Ms. Mohamed's timeliness and efficiency.

In early June 2020, Ms. Mohamed raised concerns about Ms. Barley's management style to Ms. Barley and Ms. Morris. In response and in an effort to further support Ms. Mohamed, Ms. Barley consulted a member of SHRM's Human Resources department, Mike Jackson, about Ms. Mohamed's concerns. The evidence shows that contrary to Ms. Mohamed's current allegations, Ms. Barley harbored no retaliatory animus, but instead continued to support Ms. Mohamed notwithstanding her complaints.

Mr. Jackson proceeded to investigate Ms. Mohamed's claims. He interviewed key witnesses—Ms. Mohamed, Ms. Barley, and other members of the Education Team. He reviewed timelines, deadlines, documents, and complaints. Not only did SHRM appropriately, and thoroughly, investigate Ms. Mohamed's allegations, but it also recommended that Ms. Mohamed and Ms. Barley engage in mediation. SHRM engaged Bernée Long—a Black woman, a licensed attorney, and a former administrative law judge. Ms. Long met with both Ms. Barley and Ms. Mohamed. However, ***Ms. Mohamed decided to withdraw from the mediation before it concluded***, showing that Ms. Mohamed rebuffed SHRM's attempts to address her concerns.

### D. SHRM Terminated Ms. Mohamed's Employment After She Missed the HR Compliance and Digital HR Deadlines.

On very short notice, and despite her looming August 31 deadlines, Ms. Mohamed

3

took vacation from July 29 to August 8, 2020. After she took vacation, Ms. Mohamed asked for additional extensions on the two projects. However, Ms. Barley held firm on the August 31 deadline, which Ms. Mohamed knew of before her vacation. Ms. Mohamed responded by deflecting and making excuses for why the deadlines could not be met, including the fact that she recently took a long vacation. After being denied the requested extensions, Ms. Mohamed complained, for the first time, about purported retaliation.

When Ms. Mohamed ultimately submitted the materials for HR Compliance and HR Digital, the materials she submitted were incomplete. SHRM terminated Ms. Mohamed's employment on September 1, 2020, due to her failure to meet her August 31 deadlines, after receiving multiple extensions on both courses.

### III. LEGAL ISSUES

Ms. Mohamed has asserted claims for retaliation and discrimination under 42 U.S.C. § 1981. To prevail on her discrimination claim, Ms. Mohamed must prove that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) her race was the but-for cause behind SHRM's decision to termination her employment. *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F. 4th 1202, 1215 (10th Cir. 2022). And to prevail on her retaliation claim, Ms. Mohamed must prove: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) but-for her decision to engage in protected activity she would not have suffered an adverse employment action. *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1198 (10th Cir. 2015). In this case, SHRM concedes that Ms. Mohamed is a member of a protected class as she is Egyptian and that she suffered an adverse employment action as SHRM terminated her employment.

### A. Ms. Mohamed Must Prove that the But-for Cause of SHRM's Decision to Terminate Her Employment Was Either Her Race or Alleged Protected Activity.

The Parties have submitted competing jury instructions on each of Ms. Mohamed's discrimination and retaliation claims. Principally at issue is whether "but-for" cause requires that Ms. Mohamed prove that the sole reason for her termination was her race (for her discrimination claim) or her alleged protected activity (for her retaliation claim). Ms. Mohamed takes the position that "but-for" cause merely requires her to prove that her race or protected activity were factors that "made a difference." In support, Ms. Mohamed cited cases defining "but-for" cause under statutes other than Section 1981. *See generally Jones v. Okla. City Public Schools*, 617 F.3d 1273, 177 (10th Cir. 2010) (setting forth standard under the Age Discrimination in Employment Act); *Miller v. Nat'l Jewish Health*, 2024 U.S. Dist. LEXIS 49600 at **43-44 (D. Colo. March 20, 2024) (setting forth standard in Title VII retaliation context).

Ms. Mohamed's position, however, is at odds with the Supreme Court's decision in *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,* 589 U.S. 327, 344 (2020), in which the Court held that plaintiffs asserting Section 1981 claims must "prove that race was **the** but-for cause of" their injury. *Id.* (Ginsberg, J., concurring) (emphasis added); *Garcia v. Summit Tech. Sols., LLC*, 2022 WL 4467038, at *4 (D. Colo. Sept. 26, 2022), *report and recommendation adopted*, 2022 WL 10028881 (D. Colo. Oct. 17, 2022) ("a plaintiff must show that her race was not just one factor, but indeed the reason for, her injuries"); *Yazzie v. Nat'l Org. for Women*, 712 F. Supp. 3d 56, 92 (D.D.C. 2024) ("[I]t seems safe to assume that a but-for causation standard also governs section 1981 retaliation claims."). Indeed, the Court specifically rejected the notion that a "motivating factor" standard applies to claims brought under Section 1981. *Comcast Corp.*, 589 U.S.

at 337-40 (rejecting the argument that the "motivating factor" standard applicable in the Title VII context applies to Section 1981). Put otherwise, a plaintiff must prove "that, but for race, [she] would not have suffered the loss of a legally protected right." *Id.* at 341. Because SHRM's proposed jury instructions for "Section 1981 Discrimination" and "Section 1981 Retaliation – Elements" properly instruct the jury on the appropriate "but-for" cause standard, the Court should adopt SHRM's instructions.

Ms. Mohamed will not be able to prove that the reason for SHRM's decision to terminate her employment was either her race or alleged protected activity because SHRM terminated her employment based on her performance; namely, her failure to timely complete the HR Compliance and Digital HR projects after receiving numerous extensions. In any event, even under the wrong standard—whether Ms. Mohamed's race or alleged protected activity was a "motivating factor" in SHRM's decision to terminate her employment—Ms. Mohamed will still be unable to prove either claim as SHRM's decision to terminate her employment was based on her performance.

### B. Ms. Mohamed Did Not Have a Reasonable Belief She Engaged in Protected Activity Under Section 1981.

Ms. Mohamed will not be able to prove her retaliation claim because she will not be able to establish that her complaints constituted protected activity as it was objectively unreasonable for her to believe that the conduct she complained of—being micromanaged—had anything to do with her race or her alleged protected activity. *Aspaas v. Becerra,* 2024 WL 4360036, at *7 (10th Cir. Oct. 1, 2024) (holding that employee's subjective belief that certain conduct was discriminatory was not reasonable where there was nothing inherently discriminatory about the conduct complained of). Indeed, the behavior Ms. Mohamed complained of—microaggressions and implicit bias—

6

do not constitute unlawful discrimination under Section 1981, and it was therefore unreasonable for Ms. Mohamed to believe it did. *See Scott v. Brandon Co. of Tennessee, LLC*, 2025 WL 852504, at *19 (M.D. La. Mar. 18, 2025) ("By its very definition, a microaggression may be subjectively perceived as race-based but is not necessarily race-based or ill-intentioned by the alleged aggressor."); *c.f. Howard v. Blue Ridge Health Dist.* 2023 WL 2541132, at *12 (W.D. Va. Mar. 16, 2023) (holding that it would not have been reasonable for plaintiff to have believed that the microaggressions she complained of violated Title VII). Moreover, the record contradicts Ms. Mohamad's claim that Ms. Barley unfairly micromanaged her.

### C.     Much of Carrie Mills' Anticipated Testimony Will Be Inadmissible.

Based on her declaration submitted in support [Dkt. No. 84-1 at 74-79] of Ms. Mohamed's Response to SHRM's Motion for Summary Judgment [Dkt. No. 84], SHRM anticipates that Ms. Mills will offer testimony that constitutes hearsay or will concern topics of which she does not have personal knowledge.

First, SHRM expects that Ms. Mills will testify about the content and "tone" of conversations she ***speculates*** occurred between Ms. Mohamed and Ms. Barley. Because Ms. Mills does not have personal knowledge of conversations she allegedly overheard—and can therefore only speculate as to what occurred between Ms. Mohamed and Ms. Barley—such testimony is inadmissible. *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 2014 WL 348637, at *3-4 (D. Colo. Jan. 31, 2014) (holding that testimony based on employee's speculation was inadmissible).

Second, SHRM predicts that Ms. Mills will offer testimony about statements allegedly made by non-decisionmakers such as Bernée Long and Ann Godmere. Such testimony would constitute hearsay and would not fall under the party-opponent exceptions to hearsay because SHRM is not bound by statements made by employees that did not have a role in the decision to terminate Ms. Mohamed's employment. *Johnson*

7

*v. Weld County, Colo.*, 594 F.3d 1202, 1208-09 (10th Cir. 2010) (holding that "an employee's statements are not attributable to his employer as a party-opponent admission unless the employee was involved in the decision-making process affecting the employment action" at issue).

Third, SHRM anticipates that Ms. Mills will testify that she received more time to complete courses than Ms. Mohamed. If such statements are offered to prove that Ms. Mills did indeed receive more time to complete courses than Ms. Mohamed, such testimony would constitute hearsay because Ms. Mills' knowledge of whether she received more time to complete courses than Ms. Mohamed would necessarily be based on what other people told Ms. Mills. *Bateman v. United Parcel Serv., Inc.*, 31 F. App'x 593, 597 (10th Cir. 2002) (concluding that "Plaintiff's testimony regarding the different treatment of her male co-workers was not based on personal knowledge but on what she was told by others" and thus such evidence was inadmissible).

### D. Much of Ms. Mohamed's Expected Testimony Will Be Inadmissible.

SHRM expects that Ms. Mohamed will testify that her white coworkers received extensions of time while she did not. Such testimony, however, would be hearsay because Ms. Mohamed does not have personal knowledge of whether her coworkers received extensions; rather, her knowledge would be based on what she was told by others. *Bateman*, 31 F. App'x at 597; *see also Lingenfelter v. Kaiser Found. Health Plan of Colorado*, 2021 WL 722974, at *6 (D. Colo. Feb. 24, 2021) (holding that "[r]umors and comments made by out-of-court colleagues are inadmissible hearsay"). SHRM also predicts that Ms. Mohamed will opine that her white coworkers were treated better than her. Such testimony, however, would be inadmissible. *Byrne v. Am. Soc'y for Prevention of Cruelty to Animals*, 2025 WL 1566642, at *5 (E.D.N.Y. June 3, 2025) (holding that the plaintiff's opinion that her employer treated "black employees worse than non-black

8

employees" was inadmissible because such it was "opinion evidence from a layperson").

Moreover, SHRM anticipates that Ms. Mohamed, like Ms. Mills, will testify about statements made by non-decisionmakers, including statements made by Mr. Jackson and Ms. Long. Again, such statements would constitute hearsay. *Johnson*, 594 F.3d at 1208-09; *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007) ("Thomas has not shown, however, that Pridgett was authorized to make a statement concerning the alleged negative reference, or that this subject was a matter within the scope of Pridgett's employment at Atmos.").

Finally, SHRM believes that Ms. Mohamed will attempt to testify on the results of SHRM engagement surveys as showing that the people in her department were generally unhappy with their management team. Such testimony would constitute hearsay to the extent Ms. Mohamed offers such testimony to evince that people within her department were unhappy with their management team. *C.f. SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 WL 1319361, at *4-5 (D. Colo. Apr. 2, 2014) (holding that customer surveys constituted hearsay and did not fall within the business records exception under Fed. R. Evid. 803(6) because they were not records of any "act, transaction, occurrence or event, as required by Rule 803(6)").

### E. The Court Should Admit the Recording of Carrie Mills' Exit Interview Into Evidence.

On June 13, 2024, SHRM produced a recording of Carrie Mills' exit interview that was discovered after the close of discovery. The recording contradicted many of Ms. Mills' statements made in her declaration. Ms. Mohamed has not sought to exclude this evidence and the deadline to file a motion *in limine* has long since passed. *C.f. Woulard v. Greenwood Motor Lines, Inc.*, 2019 WL 3318467, at *5 (S.D. Miss. Feb. 4, 2019). In

9

any event, Plaintiff likely realizes that the recording can be admitted for rebuttal or impeachment purposes. *See Pasina ex rel. Taputu v. California Cas. Indem. Exch.*, 2010 WL 3860646, at *22 (D. Nev. Sept. 28, 2010).

## IV.  CONCLUSION

SHRM respectfully requests that the Court consider the facts and arguments presented in this trial brief in any decision it makes related to SHRM's case at trial.

Dated October 15, 2025.

*s/ Virginia L. Woodfork*
Virginia L. Woodfork
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: 303.362.2824
Facsimile:  303.629.0200
Email: vwoodfork@littler.com

Tanja Darrow
LITTLER MENDELSON, P.C.
633 West Fifth Street, 63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile:   213.443.4299
Email: tdarrow@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October 2025, a true and correct copy of the foregoing **DEFENDANT'S TRIAL BRIEF** was filed by CM/ECF and was served on the following parties:

Ariel Beryl DeFazio
Lowrey Parady Lebsack LLC
1490 Lafayette Street, Suite 304
Denver, CO 80218
Tel: 303-593-2595
ariel@lowrey-parady.com

Hunter Anthony Swain
Swain Law LLC
1490 North Lafayette Street, Suite 303
Denver, CO 80218
Tel: 720-815-5281
hunter@swainemploymentlaw.com

*Attorneys for Plaintiff*

Robert Allen Lees
Robert A. Lees & Associates
5655 South Yosemite Street, Suite 350
Greenwood Village, CO 80111
Tel: 303-292-1020
ral@robertalees.com

*Attorney for Interested Party*

*s/ Elisabeth L. Egan*
Elisabeth L. Egan