**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.1:22-cv-01625-GPG-KAS

REHAB MOHAMED,

      Plaintiff,

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

      Defendant.

---

**DEFENDANT'S MOTION FOR JUDGEMENT AS A MATTER OF LAW AT THE CLOSE OF PLAINTIFF'S EVIDENCE**

---

Defendant Society for Human Resource Management ("SHRM" or "Defendant") respectfully moves, pursuant to Federal Rule of Civil Procedure 50(a), for Judgment as a Matter of Law in its favor. Plaintiff Rehab "Ruby" Mohamed ("Plaintiff" or "Ms. Mohamed") has failed to present a legally sufficient evidentiary basis for any reasonable jury to find in her favor on her race discrimination and retaliation claims brought under 42 U.S.C. § 1981. Because the record contains no evidence that could support a verdict for Ms. Mohamed, SHRM respectfully requests that the Court enter judgment in SHRM's favor on all of Ms. Mohamed's claims.

**I.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 50(a)(1), once a party has been fully heard on an issue during a jury trial, and the Court determines that a reasonable jury would lack a legally sufficient evidentiary basis to find for that party, the Court must enter judgment as a matter of law. *See* Fed. R. Civ. P. 50(a)(1). This standard mirrors the summary

judgment under Rule 56. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *In re Cox Enters., Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017). Thus, even viewing the record in the light most favorable to a plaintiff, judgment as a matter of law must be entered where no reasonable jury could find in her favor. *Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010); *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009).

To avoid judgment as a matter of law, a plaintiff must present evidence—not speculation or conjecture—from which a reasonable jury could infer discrimination or retaliation. *See Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1200 (10th Cir. 2015) ("mere conjecture" of pretext is insufficient); *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1172 (10th Cir. 2007) (rejecting claims based solely on conjecture); *Lindsay v. Denver Public Schools*, 88 F.4th 1323, (10th Cir. Dec. 22, 2023) (affirming district court's grant of summary judgment on claims supported only by speculation); *see also Weaks v. Roadway Express, Inc.*, 259 F. App'x 75, 79 (10th Cir. 2007) (affirming district court's grant of judgment as a matter of law on the basis that "Roadway had an independent verifiable reason for terminating Mr. Weaks—excessive absenteeism."). Where the record lacks independent evidence supporting a plaintiff's theory, judgment as a matter of law is required. *Harolds Stores, Inc. v. Dillard Dep't Stores*, 82 F.3d 1533, 1546–47 (10th Cir. 1996). Fed. R. Civ. P. 50(a)(2).

Here, Ms. Mohamed has been fully heard and has failed to offer legally sufficient evidence on every element of her race discrimination and retaliation claims. Accordingly, this motion is both timely and appropriate.

## II. ARGUMENT

### A. Ms. Mohamed Failed to Present Sufficient Evidence of Race Discrimination.

Ms. Mohamed did not introduce evidence from which a reasonable jury could conclude that SHRM discriminated against her ***because of*** race. She offers no direct evidence of discrimination—no racial slurs, comments, or remarks attributed to Ms. Barley or any other decisionmaker. Nor does she present indirect evidence of bias. To the contrary, Ms. Mohamed admitted that her performance evaluation was not discriminatory and acknowledged that Ms. Barley had minimal managerial interaction with her prior to her June 12, 2020 complaint. Her reliance on an alleged comparator is misplaced. Carrie Mills is not a valid comparator given her formal training as an instructional designer and years of experience. But more importantly, Ms. Mills' opinion of Ms. Mohamed's performance is not only speculative, but also irrelevant.

The record further demonstrates that SHRM treated Ms. Mohamed more favorably than other Senior Instructional Designers. She was assigned fewer projects, had fewer responsibilities, and granted more deadline extensions than her peers. Despite these advantages, Ms. Mohamed repeatedly failed to deliver completed projects—even after receiving nearly twice the industry standard to complete these projects. Having repeatedly failed to timely complete two projects—her only projects—SHRM had no choice but to terminate her employment. Accordingly, SHRM is entitled to judgment as a matter of law on Ms. Mohamed's race discrimination claim.

### *i.     Ms. Mohamed has not presented any direct evidence of discrimination.*

Ms. Mohamed's race discrimination claim fails as a matter of law because she cannot produce any direct evidence that her termination was motivated by race. Under Tenth Circuit precedent, direct evidence must "demonstrate on its face that the employment decision was reached for discriminatory reasons." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002); *see also Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 915 (10th Cir. 2004). Ms. Mohamed identifies no statement, document, or conduct suggesting racial bias. She concedes that Ms. Barley never used racial slurs or made racially charged remarks.

The evidence further belies a finding of direct evidence. Ms. Barely encouraged Ms. Mohamed to apply, decided to promote her in January 2020 (despite concerns raised by her own supervisors that Ms. Mohamed was not ready), and advocated for Ms. Mohamed to receive the highest raise possible for the promotion. Ms. Barley gave Ms. Mohamed every opportunity and she squandered it. The record further shows that Ms. Barley treated Ms. Mohamed *more* favorably than her peers and extended significant leniencies to her. Specifically, Ms. Mohamed received multiple deadline extensions and nearly twice amount time than would be standard in her industry to complete her projects—even as SHRM faced a significant revenue loss due to COVID-19, eliminating all in-person conferences and seminars. Nevertheless, Ms. Mohamed failed to perform her core job duties. For example, after assuming full responsibility for the HR Compliance project on June 26, 2020, she took no action on the first three modules received weeks earlier and only attempted progress when termination became imminent. These

undisputed facts confirm that Ms. Mohamed did not meet SHRM's legitimate performance expectations at a time when the Instructional Design Team was critical to SHRM's ability to keep the lights on. SHRM had no choice but to terminate her employment

No reasonable jury could conclude that race played any role in SHRM's decision. The evidence demonstrates that Ms. Mohamed would have been terminated regardless of her race.

### ii. Ms. Mohamed failed to present "indirect" evidence of discrimination.

Under the indirect method of proof established in *McDonnell Douglas Corp. v. Green*, a plaintiff must establish a *prima facie* case of race discrimination by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). Even if Ms. Mohamed could satisfy this initial burden, the ultimate burden of persuasion remains with her to prove that race was the but-for cause of her termination. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Here, SHRM does not dispute that Ms. Mohamed is a member of a protected class and that her employment was terminated. However, Ms. Mohamed has failed to present any evidence that her termination occurred under circumstances suggesting racial animus, nor has she identified similarly situated comparators who were treated more favorably. Most critically, she has not produced evidence that her race was the determinative factor—the "but-for" cause—of her termination.

As discussed above, the evidence shows that Ms. Mohamed was treated better than peers in regard to the numerous extensions she received and the lighter workload. Additionally, Ms. Mills testimony does not satisfy Ms. Mohamed's evidentiary burden for several reasons. First, Ms. Mills' testimony is speculative at best and has no relevance to whether Ms. Barley discriminated against Ms. Mohamed. Indeed, Ms. Mills never met Ms. Mohamed in person, never worked with her, and never observed her interactions with Ms. Barley firsthand. In fact, Ms. Mohamed admits that Instructional Designers at SHRM primarily worked independently and had very little interaction with one another. Thus Ms. Mills' testimony about Ms. Mohamed's workplace interactions or alleged exposure to discrimination are undoubtedly speculative and unsupported by personal knowledge. *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-CV-00970-PAB-KMT, 2014 WL 348637, at *3-4 (D. Colo. Jan. 31, 2014) (holding that testimony not based on personal knowledge was speculative and thus inadmissible). Finally, even if Ms. Mills had personal knowledge of Ms. Mohamed's interactions with Ms. Barley, her opinion is irrelevant.

### B. Ms. Mohamed Failed to Introduce Sufficient Evidence that She Engaged in Protected Activity Under Section 1981.

Ms. Mohamed's retaliation claim fails as a matter of law because she did not establish that her complaints constituted protected activity as it was objectively unreasonable for her to believe that the conduct she complained of—being micromanaged—had anything to do with her race or her alleged protected activity. *Aspaas v. Becerra,* No. 23-2157, 2024 WL 4360036, at *7 (10th Cir. Oct. 1, 2024) (holding that employee's subjective belief that certain conduct was discriminatory was not reasonable where the complained of conduct was not inherently discriminatory). Indeed,

the behavior Ms. Mohamed complained of—microaggressions and implicit bias—do not constitute unlawful discrimination under Section 1981, and it was therefore unreasonable for Ms. Mohamed to believe it did. *See Scott v. Brandon Co. of Tennessee, LLC*, 2025 WL 852504, at *19 (M.D. La. Mar. 18, 2025) ("By its very definition, a microaggression may be subjectively perceived as race-based but is not necessarily race based or ill-intentioned by the alleged aggressor."); *c.f. Howard v. Blue Ridge Health Dist.* 2023 WL 2541132, at *12 (W.D. Va. Mar. 16, 2023) (holding that it would not have been reasonable for plaintiff to have believed that the microaggressions she complained of violated Title VII). Moreover, the record contradicts Ms. Mohamad's claim that Ms. Barley unfairly micromanaged her as the evidence showed that Ms. Mohamed asked Ms. Barley to keep her on track after she turned in her first assignment as a Senior Designer late. Thus, Ms. Mohamed set the tone for their relationship, not Ms. Barley.

**C.    Ms. Mohamed Failed to Introduce Evidence that the But-for Cause of SHRM's Decision to Terminate Her Employment Was Either Her Race or Alleged Protected Activity.**

To overcome SHRM's Rule 50(a) motion, Ms. Mohamed must present legally sufficient evidence from which a reasonable jury could conclude that her termination was motivated by race or her alleged protected activity. Put differently, she must prove that her race or alleged protected activity was the "but-for cause" of her termination. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 344 (2020); *Garcia v. Summit Tech. Sols., LLC*, 2022 WL 4467038, at *4 (D. Colo. Sept. 26, 2022), report and recommendation adopted, 2022 WL 10028881 (D. Colo. Oct. 17, 2022)* (explaining that a plaintiff must show race was not merely one factor but the reason for her injury). She

has not met this burden. There is no evidence that she would have remained employed with SHRM "but for" her race or alleged protected activity.

The undisputed evidence shows the opposite. Ms. Mohamed received multiple extensions to complete the HR Compliance and Digital HR projects—far more time than industry standards dictate. In fact, the evidence showed that SHRM instructional designers produced courses ***much faster than*** industry standard. Although she assumed full ownership of the HR Compliance program on June 26, 2020, she failed to perform any meaningful work for more than a month and continued to rely on the same SME she acknowledged could not meet deadlines. As the project deadlines approached, she chose to take a vacation, leaving her scrambling to complete the projects before her deadline. Dr. Waddill's decision to withdraw from teaching the course due to Ms. Mohamed's shoddy work product confirms the disarray. Most critically, Ms. Mohamed admitted the projects were incomplete when she submitted them. These uncontroverted facts demonstrate that her employment would have been terminated regardless of any complaint or other purported reason. Thus, Ms. Mohamed failed to establish that any of her alleged protected activity or her race was the but-for cause of Ms. Barley's decision to terminate her employment.

The record also forecloses any inference that Ms. Barley—or anyone at SHRM—harbored racial or retaliatory animus. Recognized by the Tenth Circuit, the "same actor" inference stands for the proposition that where an employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee was not pretextual. *Antonio v.*

*Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (applying same actor inference where same decisionmakers hired and fired employee within ten month of employee's hire). In this District, the same actor inference has been applied to the situation present here – where a supervisor promotes an employee and then terminates the employee within a relatively short time span. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (same actor inference appropriate where the same individual hires and fires an employee within a short time span); *Maxey v. Restaurant Concepts II, LLC*, 654 F. Supp. 2d 1284, 1293 n.3 (D. Colo. 2009) (applying same actor inference to promotion-and-termination scenarios). The evidence shows that Ms. Barley advocated for Ms. Mohamed, supported her development, and recommended her promotion even when other leaders questioned her readiness. In fact, Ms. Barley even advocated for Ms. Mohamed to receive the highest raise possible for her promotion to Senior Instructional Designer. It is plainly implausible that a supervisor who championed her advancement despite reservations from others would suddenly decide to discriminate or retaliate against her months later.

In sum, Ms. Mohamed has failed to introduce any evidence from which a reasonable jury could conclude that she would have retained her employment with SHRM "but for" her race or alleged protected activity. Accordingly, judgment under Rule 50(a) is appropriate.

### D. SHRM had legitimate, non-discriminatory and non-retaliatory reasons for its actions.

During Ms. Mohamed's case-in-chief, SHRM's leadership explained in detail that their actions were for legitimate business reasons unrelated to Ms. Mohamed's protected

status or alleged protected activity. Specifically, as she herself acknowledged, Ms. Mohamed failed to deliver on two critical projects. *Robinson v. Dean Foods Co.*, 654 F.Supp.2d 1268, 1280 (D.Colo. July 30, 2009) ("It is difficult to see how an employee might presume that termination is not a possibility of the employee does not do his or her job as required."). The global pandemic severely impacted SHRM's primary revenue streams, making the Education Department's virtual courses critical to the organization's survival. As a result, meeting deadlines became essential, and granting extensions had significant financial consequences. Neither the jury nor the Court may act as a "super personnel department," second-guessing an employer's honestly held business judgments—even if those judgments were mistaken. *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003)). Moreover, anti-discrimination laws do not shield employees from management decisions that are "unwise, illogical, seemingly arbitrary, or even downright unfair." *Richardson v. Gallagher*, No. 10-CV-02097-MSK-CBS, 2012 WL 4359116, at *4 (D. Colo. Sept. 24, 2012), aff'd, 553 F. App'x 816 (10th Cir. 2014). Accordingly, Ms. Mohamed's race discrimination and retaliation claims fail as a matter of law.

   **E.** **Ms. Mohamed Failed to Introduce Sufficient Evidence Showing that SHRM's Stated Reasons for Terminating her Employment Were Pretextual.**

  To show pretext, a plaintiff must provide evidence suggesting that the defendant's explanation is false or insincere. *Aluru v. Anesthesia Consultants*, 176 F.Supp.3d 1116, 1128 (D. Colo. 2016). "When the employer's proffered non-discriminatory reason involves issues of employee performance, the Court" should "exercise reluctance." *Id.* Indeed, the

Court must examine "the facts as they appeared to" SHRM or Ms. Barley. *Id.* Thus, the Court should inquire whether Ms. Barley's (the decisionmaker) subjective beliefs match her stated reason for deciding to terminate Ms. Mohamed's employment. *Id.*

The uncontroverted evidence presented in Ms. Mohamed's case in chief established that Ms. Mohamed categorically did not complete HR Compliance and Digital HR by the August 31, 2020 deadlines. Ms. Barley further testified that the ***only*** reason she terminated Ms. Mohamed's employment was because of her failure to meet these deadlines. Whether Ms. Mohamed subjectively believes the deadlines were unfair, is of no import. *See id.* ("Dr. Aluru has not presented facts that would call into question Dr. Wohlner's subjective belief that Dr. Aluru's performance was deficient . . . "); *Furr v. Seagate Tech. Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).

While Ms. Mohamed has attempted to characterize Ms. Barley's deadline as arbitrary or capricious given the challenges she claims she faced with her projects, she has presented ***no evidence whatsoever*** challenging Ms. Barley's subjective belief that the August 31 deadlines for HR Compliance and Digital HR were reasonable. Indeed, significant evidence was presented, ***in Ms. Mohamed's case-in-chief***, that the deadlines were based on industry-standard expectation for the appropriate amount of time needed to develop an instructional design course, the fact that the courses were set to go live in October 2020 (meaning that SHRM needed Ms. Mohamed to deliver completed courses at least a month in advance), and that Ms. Mohamed had already received several extensions on both courses. Moreover, specific to HR Compliance, Ms. Mohamed has done nothing to controvert Ms. Barley's subjective belief that Ms. Mohamed should have

identified another subject matter expert after Ms. Mohamed learned that Mr. Lessig would be unable to complete his portion of HR Compliance. And with respect to Digital HR, Ms. Mohamed has left uncontested Ms. Barley's subjective belief that including no more than 10% of Dr. Waddill's book into Digital HR should have taken no more than two to three weeks.

Although Ms. Mohamed has presented evidence on what she surely perceives are flaws in SHRM's investigation into her purported discrimination and retaliation complaints, she has presented no evidence that SHRM's investigation was a sham such that it is evidence of pretext. *See Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1082-83 (10th Cir. 2023) (hold in Age Discrimination and Employment context, "[n]ot every imperfect or errant action by an employer will provide a sufficient basis for an employee to satisfy his burden at the pretext stage."). As the Tenth Circuit has explained, "[t]his is because, flaws in an investigation could be attributable to many factors, including a less than diligent investigator or a nondiscriminatory ulterior motivation an employer may have for terminating an employee. Thus, without some other indicia of pretext, a jury would be left to speculate that the investigatory flaws were attributable to a discriminatory motivation." But Ms. Mohamed has presented no evidence whatsoever connecting any purported flaws to a discriminatory motivation. Moreover, the evidence shows that the investigation into Ms. Mohamed's allegations was thorough. Mr. Jackson met with Ms. Mohamed on two occasions, met with Ms. Barley, and other members of the education and Mr. Jackson reviewed documents in connection with his investigation.

### III. CONCLUSION

For the reasons set forth above, Ms. Mohamed has failed to introduce sufficient evidence to permit a reasonable jury to conclude that SHRM discriminated or retaliated against Ms. Mohamed in violation of § 1981. SHRM is therefore entitled to judgment as a matter of law on Ms. Mohamed's discrimination and retaliation claims.

Dated December 4, 2025.

*s/ Virginia L. Woodfork*
Virginia L. Woodfork
Julian G.G. Wolfson
Nicholas Hankins
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: 303.362.2824
Facsimile: 303.629.0200
Email: vwoodfork@littler.com
    jwolfson@littler.com
    nhankins@littler.com

Tanja Darrow
LITTLER MENDELSON, P.C.
633 West Fifth Street, 63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile:  213.443.4299
Email: tdarrow@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2025, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW** was served on the following parties via email:

| | |
|---|---|
| Ariel Beryl DeFazio<br>Lowrey Parady Lebsack LLC<br>1490 Lafayette Street, Suite 304<br>Denver, CO 80218<br>Tel: 303-593-2595<br>ariel@lowrey-parady.com | Robert Allen Lees<br>Robert A. Lees & Associates<br>5655 South Yosemite Street, Suite 350<br>Greenwood Village, CO 80111<br>Tel: 303-292-1020<br>ral@robertalees.com |
| Hunter Anthony Swain<br>Swain Law LLC<br>1490 North Lafayette Street, Suite 303<br>Denver, CO 80218<br>Tel: 720-815-5281<br>hunter@swainemploymentlaw.com | *Attorney for Interested Party* |

*Attorneys for Plaintiff*

                                                *s/ Laura L. Custer*
                                                Laura L. Custer, Legal Assistant