**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.1:22-cv-01625-GPG-KAS

REHAB MOHAMED,

    Plaintiff,

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

    Defendant.

**DEFENDANT'S MOTION FOR NEW TRIAL**

**I.      CERTIFICATION**

Undersigned counsel certify that they conferred with counsel for Plaintiff before filing this Motion. Plaintiff opposes the Motion.

**II.     INTRODUCTION**

On December 5, 2025, the jury returned its verdict, finding that Defendant Society for Human Resource Management ("SHRM" or "Defendant") violated Plaintiff's rights under 42 U.S.C. § 1981 ("Section 1981") by discriminating against her because of her race and retaliating against her for engaging in protected conduct. [Dkt. No. 154]. With respect to damages, the jury awarded Plaintiff $1.5 million in compensatory damages and $10 million in punitive damages. The Court entered final judgment in this case on January 12, 2026. [Dkt. No. 164]. As set forth in more detail below, SHRM respectfully moves the Court for an Order granting a new trial pursuant Federal Rule of Civil Procedure ("FRCP") 59(a) because the jury's verdict was the result of passion, prejudice or bias, and the entire trial was poisoned by the introduction of inadmissible evidence and arguments. In the alternative, SHRM requests the Court alter or amend the judgment pursuant to FRCP 59(e) because the amount of damages awarded to Plaintiff is excessive and not supported by the evidence presented at trial.

**III.    ARGUMENT**

FRCP 59(a)(1) provides that a court may order a new trial after a jury has returned a verdict. *See Bryant v. Reams*, No. 16-CV-01638-NYW, 2018 WL 5886492, at *2 (D. Colo. Nov. 9, 2018). More specifically, "a new trial may be granted if the verdict is against the weight of the evidence, if the damages were excessive, if for some reason the trial

2

was unfair to the moving party, or if questions of law arise from substantial errors in admitting or rejecting evidence or instructions to the jury." *Griego v. State Farm Mut. Auto. Ins. Co.*, 839 F. App'x 258, 264 (10th Cir. 2020).

### A.   Evidentiary Rulings and Jury Instructions Warrant a New Trial.

#### 1.   *The Court failed to properly instruct the jury with respect to but-for causation.*

As courts in this jurisdiction and the U.S. Supreme Court have made clear, liability under Section 1981 requires proof of but-for causation—that is, a plaintiff must establish that race was not merely one factor, but *the determinative reason* for the adverse action. *See Garcia v. Summit Tech. Sols., LLC,* No. 21-CV-03077-CNS-MDB, 2022 WL 4467038, at *4 (D. Colo. Sept. 26, 2022) (explaining that a plaintiff must show that race was "the reason for, her injuries"), *report and recommendation adopted*, No. 21-CV-03077-CNS-MDB, 2022 WL 10028881 (D. Colo. Oct. 17, 2022); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 344, 140 S. Ct. 1009, 1021 (2020) (Ginsburg, J., concurring in the judgment) ("The Court holds today that [a plaintiff] must plead and prove that race was the *but-for cause* of its injury." (emphasis added)); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (explaining that but-for causation requires the protected characteristic to be "the factor that made a difference").

Despite this settled law, the Court instructed the jury that it could find in Plaintiff's favor if she proved that "a but-for cause" of her termination was her race and/or her decision to engage in protected activity. That instruction was legally erroneous. By suggesting that there may be multiple "but-for" causes, the instruction improperly diluted

3

the causation standard and directly conflicted with controlling Supreme Court and Tenth Circuit precedent, which requires that race be the determinative cause of the challenged action. This misstatement of the governing legal standard materially lowered Plaintiff's burden of proof and invited the jury to impose liability based on a showing insufficient as a matter of law.

> 2. *Testimony related to Ebony Thompson's complaints of discrimination and termination should not have been admitted into evidence.*

The trial transcript is replete with references to allegations by Ebony Thompson—an individual who never testified at trial—that she complained of racial discrimination while employed by SHRM and was later terminated.[1] [*See, e.g.*, Ex. B (Trial Tr. Vol. I.a) at 230:4–236:11; Ex. C (Trial Tr. Vol. II) at 79:7–80:2, 216:12–17]. This testimony invited the jury to consider untested allegations by a non-witness and to draw impermissible inferences about SHRM's motives and character. For a number of independent reasons, evidence concerning Ms. Thompson's complaints and termination was improperly admitted and should not have been presented to the jury.

First, the evidence constituted inadmissible hearsay. Although the Court permitted Plaintiff to introduce this evidence through her own testimony on the theory that it was offered not for its truth but for its purported "effect on the listener," that rationale does not withstand scrutiny. Plaintiff was never asked—nor did she testify—how any alleged statements by Ms. Thompson affected her thinking, altered her conduct, or informed her

---

[1] Attached as Exhibit A is a declaration attesting that the exhibits to this Motion are true and correct copies of excerpts from the transcript of jury trial proceedings from this case.

subjective belief that she herself was being subjected to racial discrimination. Without such testimony, the "effect on the listener" exception simply does not apply. *See, e.g., Maes v. Leprino Foods Co., Inc.*, No. 15-CV-0022-WJM-MEH, 2017 WL 1077638, at *4 (D. Colo. Mar. 22, 2017); *Tietema v. Nat'l Oilwell Varco, Inc.*, No. 14-CV-39-SWS, 2015 WL 11108847, at *2 (D. Wyo. Jan. 21, 2015).

Second, as explained in SHRM's Motion in Limine [Dkt. No. 105], Plaintiff's testimony concerning Ms. Thompson should also have been excluded under Federal Rule of Evidence ("FRE") 404(b). Courts in this jurisdiction have consistently held that evidence of prior, unrelated allegations of discrimination or retaliation is inadmissible when offered to prove that a defendant engaged in discrimination or retaliation on a specific, subsequent occasion. *See Perkins v. Fed. Fruit & Produce Co.*, No. 11-CV-00542-REB-KLM, 2012 WL 1658871, at *3 (D. Colo. May 3, 2012). That, however, is precisely how Plaintiff used the evidence at trial.

The impropriety of admitting this evidence is magnified by the fact that Plaintiff's testimony regarding Ms. Thompson was entirely unsubstantiated and uncorroborated. Courts routinely exclude "other acts" evidence under FRE 404(b) where, as here, the proponent fails to present sufficient proof that the alleged prior acts occurred at all. *See, e.g., Davis v. Dunn Constr. Co.*, 872 F. Supp. 2d 1291, 1318 (N.D. Ala. 2012) (characterizing similar testimony as a "hodgepodge of unproven *allegations*" insufficient to support an inference of discrimination); *Flagg v. City of Detroit*, 715 F.3d 165, 176 (6th Cir. 2013) (requiring sufficient evidence for a jury to find the other act occurred).

Third, even assuming the evidence was not hearsay or was admissible under FRE

5

404(b), it should have been excluded under FRE 403 because any minimal probative value was substantially outweighed by the danger of unfair prejudice. Plaintiff did not need Ms. Thompson's alleged statements or termination to show that she held a good-faith belief that she was subjected to conduct prohibited by Section 1981. The jury had ample other evidence on which to assess her subjective belief, including Plaintiff's own testimony regarding her experiences, communications with supervisors, and internal complaints. [*See* Ex. B at 197:11–240:21; Ex. C at 12:23–137:1].

By contrast, the prejudicial impact of this testimony was substantial. Indeed, courts routinely exclude such evidence on FRE 403 grounds because it poses an outsized risk of unfair prejudice while contributing little to the elements the plaintiff must prove. *See Johnson v. Interstate Brands Corp.*, 351 F. App'x 36, 41 (6th Cir. 2009) (noting that trial courts "regularly prohibit 'me too' evidence from or about other employees who claim discriminatory treatment because it is highly prejudicial and only slightly relevant"). When weighed against its minimal probative value the Court should have excluded this testimony under FRE 403.

    3.    *The Court erred in allowing Carrie Mills to testify.*

Carrie Mills should not have been permitted to testify regarding her observations of Plaintiff's alleged treatment because Plaintiff failed to timely supplement her initial disclosures as required by FRCP 26(e). As detailed in SHRM's Motion to Strike [Dkt. No. 75], Plaintiff did not identify Ms. Mills as a witness with purported knowledge of (1) Plaintiff's alleged protected activity and SHRM's response, or (2) SHRM's alleged pattern of race or color discrimination against other employees until the **discovery cutoff date**.

6

This belated disclosure deprived SHRM of any meaningful opportunity to conduct discovery concerning Ms. Mills, including taking her deposition or seeking relevant documents in her possession.

Because Plaintiff failed to comply with FRCP 26(a) and (e), the Court should have excluded Ms. Mills's testimony pursuant to FRCP 37(c)(1), which mandates exclusion unless the failure was substantially justified or harmless. Plaintiff made no such showing here. At a minimum, the Court should have afforded SHRM the opportunity to depose Ms. Mills and subpoena any relevant documents before permitting her testimony.

4.   *Ms. Barley's notes constituted inadmissible hearsay.*

A number of entries contained in Carolyn Barley's notes—introduced at trial as Exhibit 15—purported to memorialize what other employees allegedly said. As such, many of the entries presented to the jury constituted impermissible "hearsay within hearsay," with one level of hearsay consisting of Ms. Barley's out-of-court notes themselves, and a second level consisting of the out-of-court statements allegedly made by third-party employees and recorded in those notes. *See Phillips v. Potter*, No. CIV.A. 7-815, 2009 WL 3271238, at *2 (W.D. Pa. Oct. 9, 2009) ("Plaintiff's journal entries are the out-of-court statements at issue… [and] to the extent that the journal purports to record the statement of another person, it presents the problem of hearsay within hearsay.").

In response to SHRM's hearsay objection, Plaintiff argued that Ms. Barley's notes were admissible as an admission of a party opponent under FRE 801(d)(2)(D). [*See* Ex. C at 180:22–185:11]. The Court accepted that argument and admitted the notes in their entirety. [*See id.* at 185:23–186:7]. That ruling, however, was legally erroneous. While

7

FRE 801(d)(2)(D) may cure one level of hearsay, it does not render admissible every statement embedded within a document. To be admissible, each level of hearsay in a statement must independently satisfy a hearsay exception. *See Johnson v. Weld Cnty., CO*, No. 06-CV-02362-JLK, 2008 WL 4402247, at *6 (D. Colo. Sept. 24, 2008)**,** *aff'd sub nom. Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202 (10th Cir. 2010).

Here, Plaintiff made no attempt to identify any hearsay exception applicable to the second level of hearsay; namely, the alleged statements of employees recorded in Ms. Barley's notes. Because those statements were neither admissions of a party opponent nor otherwise shown to fall within a recognized exception, they were inadmissible.

        5.      *The Court impermissibly allowed Plaintiff to suggest that SHRM should be held to a higher standard.*

In its Motion in Limine, SHRM requested that the Court exclude evidence and argument portraying SHRM as a so-called "model employer" or suggesting that it should be held to a higher standard than other employers based on its expertise in human resources. [*See* Dkt. No. 105]. Despite the lack of any relevance to the elements of Plaintiff's claims and the substantial risk of unfair prejudice, the Court denied this request.

As a result, Plaintiff repeatedly invoked this improper theme throughout the trial, including during testimony and argument. [*See* Ex. D (Trial Tr. Vol. III) at 192:21–23; Ex. E (Trial Tr. Vol. IV) at 229:25–234:24; Ex. F (Trial Tr. Vol. V) at 35:8–36:13]. These references had no legitimate probative value. Instead, they invited the jury to judge SHRM not on whether it complied with Section 1981, but on whether it lived up to an extralegal, heightened standard. *See, e.g., Sarantis v. ADP, Inc.*, No. CV-06-2153-PHX-LOA, 2008

8

WL 4057007, at *9 (D. Ariz. Aug. 28, 2008) (suggesting that the defendant, a human resources company, should not be held to a higher standard of care than any other employer). By portraying SHRM as a "model employer," Plaintiff improperly appealed to the jury's emotions and moral judgment, creating a substantial risk that the verdict rested on perceived hypocrisy rather than the evidence.

      6.   *The Court incorrectly refused to bifurcate liability and punitive damages issues.*

The Court declined to bifurcate the trial into separate liability and punitive damages phases, under which evidence pertaining to punitive damages would have been admitted only after liability was established. As a result, Plaintiff was permitted to introduce evidence throughout the course of trial that was relevant solely to punitive damages, including the earnings of certain SHRM employees and SHRM's overall revenue. [*See* Ex. D at 199:3–200:25; Ex. E at 208:16–209:25]. Admitting this evidence was highly prejudicial because it exposed the jury to SHRM's financial condition before any finding of liability and invited the jury to base its Section 1981 liability determination on considerations having no bearing on whether SHRM violated the law.

Because liability and punitive issues were effectively collapsed here, the jury was encouraged to decide whether SHRM "deserved" punishment based on its size and revenues rather than focusing exclusively on the elements of Plaintiff's Section 1981 claim. The admission of punitive damages evidence during the liability phase therefore compromised the integrity of the verdict and further supports a new trial under FRCP 59.

### B.  Excessive Damages Warrant New Trial.

At the conclusion of trial, the jury awarded Plaintiff $1.5 million in compensatory, emotional distress damages and $10 million in punitive damages. Even assuming that the jury correctly found SHRM liable under Section 1981, the damages award was not supported by the evidence presented at trial and far exceeds what courts have deemed permissible under governing law. Instead, the verdict reflects an impermissible punishment untethered from the facts adduced at trial and far exceeds damages awards that courts have found excessive. Accordingly, the damages award warrants a new trial or, at a minimum, remittitur.

> 1.  *A new trial is required because the damages awarded by the jury were so excessive that it shocks the judicial conscious.*

Tenth Circuit precedent requires a trial court reviewing a jury's damages award to determine, as a threshold matter, whether the amount awarded is so excessive as to give rise to an inference that the verdict "result[ed] from jury passion and prejudice." *Blair v. Eagle-Picher Indus., Inc.*, 962 F.2d 1492, 1499 (10th Cir. 1992). That inference is warranted when an award is "so excessive as to shock the judicial conscience." *McInerney v. United Air Lines, Inc.*, 463 F. App'x 709, 723 (10th Cir. 2011) (internal quotations omitted). Once a court determines that a verdict is the product of passion or prejudice, the defect cannot be cured by simply remitting the award to an amount the court deems reasonable. *Blair*, 962 F.2d at 1499. In such circumstances, the excessiveness of the award undermines confidence in the verdict as a whole, casting doubt on whether the jury faithfully discharged its duty with respect to both liability and

damages. Under binding Tenth Circuit precedent, a new trial—not remittitur—is required, because the taint of passion or prejudice infects the entire verdict. *Id*.

          i.        <u>Compensatory Damages</u>

That the jury's verdict here was infected by passion and prejudice is nowhere more evident than in its $1.5 million compensatory damages award. Although compensatory damages are inherently intangible and cannot be calculated with mathematical precision, a jury is not free to award any amount it sees fit untethered from the evidence presented at trial. *See Hughes v. Regents of Univ. of Colorado*, 967 F. Supp. 431, 437 (D. Colo. 1996); *Scala v. Moore McCormack Lines Inc.*, 985 F.2d 680, 684 (2d Cir. 1993) ("While a jury has broad discretion in measuring damages, it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.") (cleaned up).

In light of these principles, courts across the federal circuits have repeatedly recognized that when a jury's compensatory damages award bears little or no relationship to the evidentiary record, the verdict cannot stand. *See, e.g.*, *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 120 (2d Cir. 2024) (affirming a new trial where the jury's compensatory and punitive awards were "excessive and indicative of unfair prejudice"); *Richardson v. Commc'ns Workers of Am., AFL-CIO*, 530 F.2d 126, 129–30 (8th Cir. 1976) (holding that it was not an abuse of discretion to grant a new trial where a mental-distress award was improperly intended to punish the defendant).

When determining whether an award for emotional distress damages is excessive, courts in this district consider several factors, including: "(1) the nature and severity of the

11

conduct violating the plaintiff's rights; (2) the nature and extent of the harm suffered by the plaintiff; (3) whether medical or other healthcare assistance was sought; (4) whether the plaintiff could continue to work in his chosen field; (5) the context or circumstances of defendant's acts; and (6) corroborating, objective evidence." *Blangsted v. Snowmass-Wildcat Fire Prot. Dist.*, 642 F. Supp. 2d 1250, 1257 (D. Colo. 2009) (finding an emotional distress award of $500,000 to be excessive).

Application of these factors compels the conclusion that the jury's $1.5 million compensatory damages award cannot be sustained. Plaintiff testified that she could continue working in her chosen field and offered only limited, generalized testimony regarding her emotional response to SHRM's alleged conduct. [*See* Ex. C at 134:2–136:10]. She presented no corroborating testimony, no medical or psychological records, and no evidence of treatment, diagnosis, or persistent emotional impairment. The absence of any such supporting evidence stands in stark contrast to the size of the award and confirms that the verdict was driven by emotion rather than proof.

Courts in this District further recognize that comparison to similar cases is an appropriate and important method for evaluating excessiveness. *See Hughes*, 967 F. Supp. at 437. By that measure, the jury's $1.5 million verdict is wildly disproportionate. Courts have routinely upheld emotional-distress awards several times lower in employment discrimination cases presenting comparable—or stronger—evidentiary records. *See, e.g.*, *Jackson v. Potter*, 587 F. Supp. 2d 1197, 1200 (D. Colo. 2008) (upholding $200,000 award); *Clawson v. Mountain Coal Co.*, No. 01-cv-02199, 2007 WL 4225578 (D. Colo. Nov. 28, 2007) (upholding $250,000 award). The Tenth Circuit has

likewise indicated that $300,000 marks the "upper range" of compensatory damages awards in this Circuit. *Evans v. Fogarty*, 241 F. App'x 542, 561 (10th Cir. 2007). Consistent with that guidance, the Tenth Circuit has repeatedly reduced substantially smaller awards where the evidentiary support was limited. *See Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1265 (10th Cir. 1995) ($250,000 excessive under Section 1981); *Powell v. COBE Lab'ys., Inc.*, 208 F.3d 227 (10th Cir. 2000) (affirming reduction from $300,000 to $50,000 based on sparse emotional-distress testimony). Even accounting for inflation, these verdicts come nowhere close to the $1.5 million awarded here. Accordingly, the Court should vacate the verdict and order a new trial.

          ii.     <u>Punitive Damages</u>

As SHRM explains in its Renewed Motion for Judgment as a Matter of Law, the $10 million punitive damages award was excessive and unsupported by the evidence presented at trial. To the extent the Court disagrees and concludes that the evidence was sufficient to support *some* award of punitive damages, the amount awarded by the jury nevertheless far exceeds what the evidentiary record can sustain. Because the magnitude of the award demonstrates that the punitive damages verdict was infected by jury passion and prejudice, a new trial is warranted.

Separately, the $10 million punitive-damages award violates the Due Process Clause of the United States Constitution and therefore must be vacated on that basis as well. The Due Process Clause places substantive limits on the severity of punitive sanctions the government may impose and prohibits awards that are grossly excessive in relation to the government's legitimate interests in punishment and deterrence. *See*

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416–18 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). The Supreme Court in *State Farm* identified "three guideposts" to consider in reviewing a jury's punitive damage award: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418; *see BMW*, 517 U.S. at 575. When these three guideposts are analyzed in this case, there can be no doubt that the punitive damage award is excessive.

        a)       SHRM has a very low degree of reprehensibility.

Of the three constitutional guideposts governing punitive damages, the degree of reprehensibility of the defendant's conduct is the most important. *See Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1065 (10th Cir. 2016). In evaluating reprehensibility, courts consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm,* 538 U.S. at 419.

Viewed collectively, the constitutional reprehensibility factors confirm that SHRM's conduct lies at the low end of the spectrum. The alleged harm was primarily economic, with no physical injury, and employment-related emotional distress alone does not support substantial punitive damages. The challenged conduct posed no risk to others,

14

affected only Plaintiff, and reflected neither public harm nor multiple victims. There is no evidence that Plaintiff was financially vulnerable or that SHRM exploited any economic susceptibility. The alleged misconduct consisted of a single, discrete employment decision, not repeated or ongoing conduct. Finally, although retaliation entails intentional action, the record contains no evidence of intentional malice, trickery, or deceit—only a disputed personnel decision, unsupported by proof of animus, concealment, or bad-faith manipulation. Under *State Farm* and binding Tenth Circuit precedent, these circumstances place the conduct at the lowest tier of reprehensibility and compel the conclusion that the jury's $10 million punitive damages award cannot be sustained.

        b)    A one-to-one ratio between actual harm and punitive damages is the constitutional maximum in this case.

The second *State Farm* guidepost requires the court to assess the "disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." *State Farm,* 538 U.S. at 418. As held by the U.S. Supreme Court, "[punitive] damages must bear a 'reasonable relationship' to compensatory damages," *BMW*, 517 U.S. at 580, and "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *State Farm*, 538 U.S. at 425.

In *State Farm*, the U.S. Supreme Court stated a ratio of one-to-one could well be the federal constitutional maximum in a case such as this, involving relatively low reprehensibility and a substantial noneconomic damage award. *Id.* at 425. Here, the jury's punitive damages award of $10 million is nearly 10 times the amount of compensatory damages awarded to Plaintiff, which as discussed above, was excessive in and of itself.

15

As such, the jury's award of punitive damages exceeds the constitutional limits imposed by the due process clause.

          c)      Civil penalties are not authorized by Section 1981.

The third and final *State Farm* guidepost requires the Court to consider "the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418. Section 1981, however, does not provide for any civil penalties. As such, this guidepost weighs in favor of a lower constitutional limit in this case.

### C.    This Court May, As an Alternative to a New Trial, Offer a Remittitur.

Although SHRM moves for a new trial in this matter, as the damage award is excessive and unsupported by the evidence, and because of the manifest passion and prejudice of the jury in arriving at its verdict, this case easily meets the standard for a substantial remittitur. Under these circumstances, SHRM respectfully requests, in the alternative to granting a new trial outright, that this Court order a new trial conditioned on Plaintiff's acceptance of a substantial remittitur of the damages awarded.

### IV.    CONCLUSION

The power to grant a new trial exists to correct verdicts driven by injustice or jury passion and prejudice. Because this verdict cannot be reconciled with the evidence or the law, the Court should grant a new trial or, at minimum, substantially remit the non-economic and punitive damages awarded by the jury.

Dated: February 6, 2026.

*s/ Virginia L. Woodfork*
Virginia L. Woodfork
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: 303.362.2824
Facsimile:  303.629.0200
Email: vwoodfork@littler.com

Tanja Darrow
LITTLER MENDELSON, P.C.
633 West Fifth Street, 63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile:   213.443.4299
Email: tdarrow@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February 2026, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR NEW TRIAL** was filed by CM/ECF and was served on the following parties:

Ariel Beryl DeFazio
Lowrey Parady Lebsack LLC
1490 Lafayette Street, Suite 304
Denver, CO 80218
Tel: 303-593-2595
ariel@lowrey-parady.com

Hunter Anthony Swain
Swain Law LLC
1490 North Lafayette Street, Suite 303
Denver, CO 80218
Tel: 720-815-5281
hunter@swainemploymentlaw.com

*Attorneys for Plaintiff*

Robert Allen Lees
Robert A. Lees & Associates
5655 South Yosemite Street, Suite 350
Greenwood Village, CO 80111
Tel: 303-292-1020
ral@robertalees.com

*Attorney for Interested Party*

                                        *s/ Elisabeth L. Egan*
                                        Elisabeth L. Egan